3 P.3d 1053

**RURAL METRO CORP.,**
Petitioner Employer,

Reliance Insurance Company c/o Lindsey
Morden Claims Management,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Martha Defore Porterfield,
Respondent Employee,

University Medical Center,
Respondent Employer,

University Medical Center,
Respondent Carrier.

No. 2 CA–IC 99–0003.

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 30, 1999.

Review Denied Jan. 5, 2000.

Jones, Skelton & Hochuli by Charles G.
Rehling, Phoenix, for Petitioners Employer
and Insurer.

The Industrial Commission of Arizona by Anita R. Valainis, Phoenix, for Respondent.

Tretschok, McNamara & Patten, P.C. by Patrick R. McNamara, Tucson, for Respondent Employee.

Bury, Moeller, Humphrey & O'Meara by Jean Kamm Gage and M. Ted Moeller, Tucson, for Respondent Employer and Insurer.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 In this statutory special action, petitioner/employer Rural Metro Corp. and petitioner/carrier Reliance Insurance Co. challenge the Administrative Law Judge's (ALJ) award finding respondent/employee Martha Defore Porterfield's [1] injury claim against Rural Metro compensable.[2] We affirm the award.

### Facts and Procedural History

■ ¶ 2 We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the award. *Faraghar v. Industrial Comm'n,* 184 Ariz. 528, 911 P.2d 534 (App.1995). The following facts were adduced during a five-day hearing before the ALJ. At all times relevant to this matter, Defore was working as a paramedic for both Rural Metro and University Medical Center (UMC). While working at UMC on May 15, 1997, Defore sustained a shoulder injury as she was attempting to move a patient from an examining table onto a bed. She filed an injury claim, which UMC accepted for benefits. On October 10, orthopedic surgeon Dr. Murray Robertson performed surgery on the shoulder. By early November, Defore was responding well to the surgery, and Robertson felt she would eventually return "to full activity."

¶ 3 On November 4, Robertson told Defore she could return to work at UMC. At that time, her original injury was not yet stationary and her claim with UMC was still open. Because her work as a "reserve paramedic" on an ambulance crew for Rural Metro involved more lifting, however, Robertson expressly prohibited her from returning to that work for at least another month, when he would reexamine her. Defore nevertheless chose to return to work at Rural Metro on November 19, stating she "had no choice" because of financial reasons. Although Defore and Rural Metro disagree about whether, on returning to work, she told Rural Metro personnel about her shoulder injury and surgery, Defore does not claim, nor does the record reflect, that she told anyone at Rural Metro that her physician had expressly prohibited her from working for the company.

¶ 4 On November 19, her first day back at Rural Metro, six weeks after surgery, Defore and her partner were raising a gurney with a patient on it when Defore felt a tearing sensation in her right shoulder. The next day, she saw Robertson, complaining of shooting pain down her right arm. He immediately took her off all work activity, to which she did not return for six weeks. On November 20, UMC issued a notice of claim status denying further benefits for the May 15 injury on the ground that Defore had sustained the new injury to her shoulder while working for Rural Metro the day before. Defore then filed new injury claims for the November 19 injury against both Rural Metro and UMC, which both denied. Defore requested a hearing on these denials of benefits and on UMC's denial of further benefits for the May 15 injury. The Industrial Commission set a hearing date to address these issues. In the meantime, Defore and UMC agreed to resolve by stipulation her claims against UMC. On the first day of the hearing, the ALJ accepted the stipulation, which

1. Both parties in their appellate briefs refer to Defore Porterfield simply as "Defore." Accordingly, we do so as well.

2. In its appellate briefs, Rural Metro also argued the ALJ erred in permitting Defore and her other employer University Medical Center (UMC) to resolve by stipulation Defore's claims against UMC. During oral argument before this court, all parties agreed that the stipulation between Defore and UMC would not bind Rural Metro. Accordingly, Rural Metro has withdrawn this claim of error and we do not consider it.

she concluded effectively resolved any contested issues as to UMC.

¶ 5 The ALJ proceeded solely on whether Defore had a compensable claim against Rural Metro. Based on Robertson's testimony, the ALJ determined that, while working for Rural Metro on November 19, Defore had "sustained a new injury which consisted of an aggravation" of the May 15 injury. The ALJ further found that Defore had not informed Rural Metro that Robertson had prohibited her from working on the ambulance crew. Noting that Defore "did heavy lifting with Rural Metro against [Robertson's] orders," the ALJ concluded that she "most likely sustained the new injury because she worked beyond [the] restrictions" Robertson had imposed. The ALJ nevertheless found the injury compensable, rejecting Rural Metro's contributory negligence defense, based on the conclusion that Defore's "contributory negligence or fault [could] not [be] considered at the initial compensability stage," citing *DKI Corp./Sylvan Pools v. Industrial Commission,* 169 Ariz. 357, 819 P.2d 943 (App.1991), *vacated in part on other grounds,* 173 Ariz. 535, 845 P.2d 461 (1993). And in her decision upon review, the ALJ rejected Rural Metro's alternative argument that Defore's November 19 injury was noncompensable because it had been purposely self-inflicted. Accordingly, the ALJ affirmed her award of medical and disability compensation benefits in Defore's claim against Rural Metro for the time period between Defore's November 19 injury and the date her condition is determined to be medically stationary. This special action followed.

### Compensability of Claim

¶ 6 Rural Metro does not challenge the ALJ's determination that Defore sustained an aggravation of her shoulder injury while working on November 19. It contends, however, the ALJ erred in concluding that Defore's injury had not been purposely self-inflicted and in failing to consider the reasonableness of Defore's actions in incurring the shoulder reinjury in the determination as to its compensability. We review these primarily legal issues de novo. *See Inch v.*

*McPherson,* 176 Ariz. 132, 859 P.2d 755 (App. 1992).

¶ 7 Section 23–1021(B), A.R.S., provides in relevant part as follows:

> Every employee who is covered by insurance in the state compensation fund and who is injured by accident arising out of and in the course of employment, . . . provided the injury was not purposely self-inflicted, shall be paid such compensation from the state compensation fund for loss sustained on account of the injury and shall receive such medical, nurse and hospital services and medicines, . . . as provided in this chapter.

Accordingly, pursuant to our statutory scheme, an employee's injury is compensable so long as it is work related and has not been purposely self-inflicted. *See Glodo v. Industrial Comm'n,* 191 Ariz. 259, 955 P.2d 15 (App.1997).

*Purposely self-inflicted injury claim*

¶ 8 Relying on *Glodo,* Rural Metro first challenges the ALJ's ruling that Defore's injury was not purposely self-inflicted. We presume, however, that a claimant did not intend to injure himself or herself, regardless of how inadvisable, careless, or even reckless the claimant's conduct may have been. *Mandex, Inc. v. Industrial Comm'n,* 151 Ariz. 567, 729 P.2d 921 (App.1986); *see also Lopez v. Kennecott Copper Corp.,* 71 Ariz. 212, 225 P.2d 702 (1950) (presumption against self-maiming). Defore testified that she returned to work for Rural Metro against her physician's advice because of financial pressures. Although such action was arguably careless, if not reckless, no evidence was presented to suggest, nor does Rural Metro argue, that Defore's purpose in returning to work at Rural Metro was to reinjure herself.

¶ 9 We further find Rural Metro's reliance on *Glodo* misplaced. That case holds that an employee's "intentional act of violence that produces an injury that should be expected is not accidental" but is self-inflicted and therefore not compensable under the statute. *Id.* at 262, 955 P.2d at 18. Accordingly, *Glodo* held noncompensable the claimant's injury to his hand, which he sustained when he

punched a metal freezer door during an argument with his supervisor, finding the injurious result there predictable and "almost inevitabl[e]." *Id.* at 264, 955 P.2d at 20. In contrast, Defore's injury-producing attempt to raise the patient-laden gurney was neither an act of violence nor, as the ALJ found, was it predictably certain to result in injury. *See Id.* (in distinguishing claim in that case from claims involving work-related assaults, which are typically compensable, court noted that "[w]hen a claimant assaults a co-worker, the outcome is not nearly as predictable as when the claimant slams his fist into a metal freezer door"). We agree with the ALJ's determination that Defore's shoulder reinjury was not purposely self-inflicted.

*Reasonableness of Defore's conduct*

■ ¶ 10 Relying on *DKI*, Rural Metro next argues the ALJ erred in failing to consider the reasonableness of Defore's actions in returning to work for Rural Metro, against Robertson's express prohibition, in determining whether the aggravation of Defore's shoulder injury was compensable. In *DKI*, Division One of this court discussed the compensability of consecutive injuries as enunciated in 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ch. 10 (1999), then 1 Arthur Larson, *The Law of Workmen's Compensation* ch. 13 (1990). As the court in *DKI* noted, Larson distinguishes between an initial or primary industrial injury, which is typically compensable regardless of employee fault, and a subsequent aggravation of, or new injury causally related to, the initial injury. According to Larson, "the progressive worsening or complication of a work-connected injury remains compensable so long as the worsening is not shown to have been produced by an intervening nonindustrial cause" attributable to the claimant's intentional and unreasonable conduct. *Larson's Workers' Compensation Law, supra,* at 10–1. When dealing with the treatment or care of a compensable primary injury, the employee's conduct may "break the chain of

causation [if] it amount[s] to an intentional violation of [a caregiver's] express or implied prohibition." *Id.* at 10–26 to 10–27.

¶ 11 Division One of this court and a number of other jurisdictions have adopted the Larson rule as enunciated above. *Klosterman v. Industrial Comm'n,* 155 Ariz. 435, 747 P.2d 596 (App.1987); *Allen v. Industrial Comm'n,* 124 Ariz. 173, 602 P.2d 841 (App. 1979); *see, e.g., Appleby v. Belden Corp.,* 22 Ark.App. 243, 738 S.W.2d 807 (1987) (claimant, who injured her back while working for employer, subsequently exacerbated condition by engaging in strenuous housecleaning and painting activities in contravention of physician's prohibition; such conduct held to be independent intervening cause of new injury, barring her workers' compensation claim against employer); *Amoco Chem. Corp. v. Hill,* 318 A.2d 614 (Del.Super.1974) (claimant's actions in playing basketball in disregard of physician's advice regarding physical limitations for work-related back injury resulted in aggravation of injury and surgery; such conduct constituted subsequent intervening cause barring his claim for workers' compensation benefits against employer).

¶ 12 Adopting such a rule in the context of a subsequent nonindustrial injury does not directly conflict wit§ 23–1021, which addresses only the compensability of industrial injuries. However, in *DKI*, and in the earlier case of *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 609 P.2d 1058 (App.1979), Division One appeared willing to extend the Larson rule to include those situations in which the employee's subsequent injury is industrially related. In both cases, the employee had incurred a work-related injury and later apparently suffered a new industrial injury[3] that was causally related to the initial injury. The employee in both sought workers' compensation benefits for his new injury against the employer for whom he was working when he incurred the initial injury.

¶ 13 In neither *DKI* nor *O'Donnell* did the court specifically acknowledge that the em-

---

**3.** *O'Donnell* specifically stated that the claimant's subsequent injury was industrially related. In *DKI*, the court stated that the claimant had sustained his subsequent injury while working for an employer or employers other than the defen-

dant employer for whom he was working when he had sustained the initial industrial injury, but did not specifically indicate whether the subsequent injury was industrial.

ployee's claim for benefits involved a subsequent industrial injury, rather than a nonindustrial injury, nor did it address whether, or suggest that, the "affirmative defense" of the employee's unreasonable conduct in incurring a new, industrially related injury is precluded under our statutory scheme. We conclude that our supreme court precluded such a defense in *Marriott Corp. v. Industrial Commission (Marriott II),* 147 Ariz. 116, 708 P.2d 1307 (1985).

·¶ 14 In that case, the claimant had sustained a back injury while working for a prior employer, a fact she misrepresented when she was hired by the defendant employer. After the claimant reinjured her back at work, the employer denied her claim for benefits on the ground that she had falsely denied ever having previously injured her back or having received workers' compensation benefits. In *Marriott Corp. v. Industrial Commission (Marriott I),* 147 Ariz. 123, 708 P.2d 1314 (App.1985), Division One of this court set aside the ALJ's award granting the claimant benefits against the employer, finding that, pursuant to a separate principle enunciated in Larson, claimants are precluded from receiving workers' compensation benefits if they have misrepresented their health history. Although Division One acknowledged that the legislature had not enacted a statutory provision specifically covering this circumstance, it found that, based on other anti-fraud provisions in the Workers' Compensation Act and the interpretations other jurisdictions had given similar provisions in their statutory schemes, "our legislative policy is that misrepresentation [of one's health history] should preclude recovery." *Marriott I,* 147 Ariz. at 125, 708 P.2d at 1316.

¶ 15 Our supreme court disagreed and reversed. After distinguishing the anti-fraud provisions addressed in *Marriott I,* the supreme court stated "that had the legislature intended to make the use of false representations in a pre-employment statement a bar to compensation benefits for industrial injuries, it simply could have" altered one of the existing fraud provisions to include that circumstance. *Marriott II,* 147 Ariz. at 120, 708 P.2d at 1311. Citing the doctrine of *inclusio*

*unius exclusio alterius,* the court concluded that, by not doing so, the legislature had evinced an intent that the Larson rule pertaining to pre-employment misrepresentations was not available to bar compensation. Accordingly, it held that an employee's "misrepresentation as to physical health to a prospective employer … present[s] no bar to recovery of compensation benefits for [an] industrial injury." *Id.* at 121, 708 P.2d at 1312.

¶ 16 The court then stated that "[a]bsent a specific statutory bar to eligibility, the employee's right to opt for workers' compensation benefits is constitutional and other legislation is impotent to deprive him of it." *Id.* at 122, 708 P.2d at 1313. Accordingly, it held, "Any statutory construction which would exclude an employee from workers' compensation protection will require specific language to that effect." *Id.*

¶ 17 In attempting to distinguish the supreme court's ruling in *Marriott II* from this case, Rural Metro points out that it involved a different Larson rule, which the court noted had been rejected by a number of states. Although we acknowledge the supreme court addressed the relative merits of that particular Larson rule in its decision, its broad holding nevertheless appears to proscribe any bar to workers' compensation benefits absent specific statutory language to that effect. We find nothing in the court's language to suggest that its holding was limited to the facts of that case or the particular rule addressed. Accordingly, we reject Rural Metro's claim that *Marriott II* does not control here.

¶ 18 Because we find no specific language in our workers' compensation statutes precluding an employee's claim for benefits against a subsequent employer for consecutive, industrially related injuries based on the employee's unreasonable conduct, we must conclude, pursuant to *Marriott II,* that such circumstances are not a bar to compensation under our statutory scheme. Section 23–1021 provides that an employee's injury is compensable so long as it is industrially related and has not been purposely self-inflicted. Having previously found that Defore's aggravation of her shoulder injury was both

**138**

industrially related and not purposely self-inflicted, her injury was compensable.

¶ 19 Accordingly, we affirm the award.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and JOSEPH W. HOWARD, Judge.