90 P.3d 211

David C. GRAMMATICO, Petitioner,

v.

The INDUSTRIAL COMMISSION, Respondent,

AROK, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 01–0117.

Court of Appeals of Arizona, Division 1, Department A.

May 20, 2004.

As Amended June 15, 2004.

Jerome, Gibson, Stewart, Friedman, Stevenson & Engle, P.C., By Joel F. Friedman, Phoenix, Attorneys for Petitioner.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Jones, Skelton & Hochuli, By Charles G. Rehling, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

TIMMER, Judge.

¶ 1 In 1999, the legislature amended Arizona Revised Statutes ("A.R.S.") section 23–1021 to provide that if an employer implements a drug-free workplace policy, a worker who suffers a workplace injury and subsequently tests positive for alcohol impairment or illegal drug use is not eligible for workers' compensation benefits unless one of three exceptions applies. A.R.S. § 23–1021(D) (Supp.2003). In this special action, we are asked to decide whether this provision violates Article 18, Section 8, of the Arizona Constitution by depriving workers of compensatory benefits for injuries "caused in whole, or in part, or ... contributed to" by necessary employment risks and dangers. For the reasons that follow, we conclude that § 23–1021(D) violates Article 18, Section 8, as applied in this case. Consequently, we set aside the award entered by the Industrial Commission of Arizona ("ICA"), which denied benefits to petitioner David C. Grammatico based on an application of § 23–1021(D).

## BACKGROUND

¶ 2 On Monday, May 8, 2000, Grammatico was employed by respondent employer AROK, Inc., as a working foreman of a crew installing sheet metal trim on a building exterior. Grammatico performed his work on drywall stilts approximately 42 inches in height. After working for several hours on the stilts, Grammatico fell while walking through a cluttered area of the job site, breaking his right wrist and left knee. He had successfully traversed the area on stilts earlier in the day without falling.

¶ 3 Later in the afternoon of May 8, Grammatico admitted that he had smoked marijuana and nasally ingested three to four "lines" of methamphetamine on Saturday, May 6, and had again ingested three to four lines of methamphetamine on Sunday, May 7. A urine sample provided by Grammatico in the hours after his fall tested positive for carboxy THC (a marijuana metabolite), amphetamine [1] and methamphetamine, all of which are illegal to use in Arizona. *See, e.g.,* A.R.S. § 13–3401 (Supp.2003).

¶ 4 The respondent insurance carrier's predecessor-in-interest [2] denied Grammatico benefits, which he protested. At a subsequent hearing held before an administrative law judge ("ALJ"), evidence was presented that AROK maintained a certified drug-testing policy in compliance with A.R.S. §§ 23–493 to –493.11 (1995 & Supp.2003), and had timely filed certification of its policy with the ICA, thereby triggering the applicability of A.R.S. § 23–1021(D). That provision states, in pertinent part, as follows:

[I]f the employer has established a policy of drug testing or alcohol impairment testing ... an employee's injury or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter, if the employee of such an employer fails to pass, refuses to cooperate with or refuses to take a drug test for the unlawful use of any controlled substance proscribed by title 13, chapter 34 ... that is administered by or at the request of the employer not more than twenty-four hours after the employer receives actual notice of the injury, unless the employee proves any of the following:

1. The employee's use of alcohol or ... any unlawful substance proscribed by title

1. Amphetamine is a methamphetamine metabolite.

2. HIH Insurance Company served as the original insurance carrier in this case. After a California court placed HIH into liquidation in 2001, the ICA assigned all HIH claims, including Grammatico's claim, to the State Compensation Fund ("Fund").

13, chapter 34 was not a contributing cause of the employee's injury or death.

2. The ... employee's alcohol concentration was lower than ... would constitute a violation of § 28–1381, subsection A and would not create a presumption that the employee was under the influence of intoxicating liquor [0.08 blood alcohol content]....

3. The drug test or alcohol impairment test used cutoff levels ... that were lower than the cutoff levels prescribed at the time of the testing for transportation workplace drug and alcohol testing programs under [federal regulations].

¶5 Applying § 23–1021(D)(1), the ALJ found the claim noncompensable because Grammatico had failed to prove that his use of unlawful controlled substances "was not a contributing cause" of his injuries. This special action followed.[3]

### STANDARD OF REVIEW

■ ¶6 We deferentially review the ALJ's factual findings but independently review his legal conclusions. *See, e.g., PFS v. Indus. Comm'n of Ariz.,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997). We analyze the constitutionality of a statute de novo, beginning with the strong presumption that the statute is constitutional. *See, e.g., Lapare v. Indus. Comm'n of Ariz.,* 154 Ariz. 318, 321, 742 P.2d 819, 822 (App.1987). Grammatico, as the party challenging the constitutionality of § 23–1021(D), bears the burden of overcoming this presumption. *Id.* Additionally, we will declare § 23–1021(D) unconstitutional only if we are satisfied that it conflicts with Article 18, Section 8, of our constitution. *Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982).

### DISCUSSION

■ ¶7 Article 18, Section 8, of the Arizona Constitution provides, in relevant part, as follows:

The Legislature shall enact a Workmen's Compensation Law ... by which compensation shall be required to be paid to any such workman, in case of his injury ... if in the course of such employment personal injury to ... any such workman from any accident arising out of and in the course of, such employment, is caused *in whole, or in part, or is contributed to,* by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof....

Emphasis added. The statutory scheme created by the legislature to implement the constitutional mandate, *see* A.R.S. §§ 23–901 to 23–1091 (1995 & Supp.2003), provides that any employee who accepts workers' compensation waives the right to sue his or her employer for tort damages. A.R.S. § 23–1024(A) (1995); *see also* A.R.S. § 23–906(A) (1995) (providing that before compensable injury employee may opt out of workers' compensation coverage and elect to sue employer in tort). Thus, the guiding principle of the system "is a trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for accidental injuries sustained in work-related accidents." *Stoecker v. Brush Wellman, Inc.,* 194 Ariz. 448, 451, ¶11, 984 P.2d 534, 537 (1999); *Aitken v. Indus. Comm'n of Ariz.,* 183 Ariz. 387, 393, 904 P.2d 456, 462 (1995) ("[I]n the context of efficiently and expeditiously providing compensation to injured workers, which is what the [workers' compensation] system is designed to do, fault remains no consideration.").

■ ¶8 In order to receive compensatory benefits, a claimant must show both legal causation and medical causation. *DeSchaaf v. Indus. Comm'n of Ariz.,* 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App.1984) (citing 1B A. Larson, *Workmen's Compensation Law* § 38.83 (1982)).[4] A claimant shows "legal

---

**3.** After the parties filed their respective briefs in this case, we issued an order notifying the Arizona Attorney General of Grammatico's constitutional challenge to A.R.S. § 23–1021(D) and providing the Attorney General an opportunity to address the claim. *See* A.R.S. § 12–1841 (2003) (providing Attorney General must be given op-

portunity to address constitutional challenges to state statutes). Thereafter, the Attorney General declined to file a brief addressing the issue.

**4.** This principle is presently found in 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 46.03[1] at 46–6 (Supp.2003).

causation" by demonstrating that the accident arose out of and in the course of employment. *Id.; Noble v. Indus. Comm'n of Ariz.*, 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App.1984). Conversely, "medical causation" is established by showing that the industrial accident caused the injury. *Id.* Article 18, Section 8, of the Arizona Constitution does not address medical causation but delineates the scope of legal causation by providing that a compensable injury "is caused in whole, or in part, or is contributed to" by a necessary risk or danger of employment. *DeSchaaf*, 141 Ariz. at 321, 686 P.2d at 1291. The legislature cannot enact legislation altering legal causation in a manner that conflicts with Article 18, Section 8. *Id.* at 320 n. 1, 321, 686 P.2d at 1290 n. 1, 1291; *see also Alvarado v. Indus. Comm'n of Ariz.*, 148 Ariz. 561, 564, 716 P.2d 18, 21 (1986) ("It is not within the power of the legislature to abolish compensation for occupational diseases, nor to limit payment by imposing conditions proscribed by the constitution.") (quoting *Ford v. Indus. Comm'n of Ariz.*, 145 Ariz. 509, 517, 703 P.2d 453, 461–62 (1985)).

¶ 9 Grammatico argues that A.R.S. § 23–1021(D) violates Article 18, Section 8, of the Arizona Constitution by restricting legal causation. Specifically, he contends that § 23–1021(D) injects the concept of fault into the no-fault compensation system by abrogating claims for injuries that are caused "in whole, or in part, or [are] contributed to" by necessary risks or dangers of employment if, with exception, injured workers fail to pass, refuse to cooperate with, or refuse to take a drug test requested by an employer with a qualified drug and alcohol testing policy. The Fund responds that § 23–1021(D) does not affect legal causation but instead regulates the method of proving medical causation, which is constitutionally permissible.

¶ 10 Both parties rely on this court's decision in *DeSchaaf* to support their respective positions. In that case, the ICA denied compensation to a claimant who had suffered an on-the-job stroke that she attributed to work-related stress. *DeSchaaf*, 141 Ariz. at 319, 686 P.2d at 1289. The ALJ ruled that the claimant had failed to meet her burden under A.R.S. § 23–1043.01(A) (1995), which

provided, in relevant part, that "[a] heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable ... unless some injury, stress or exertion related to the employment was a substantial contributing cause of the ... injury, illness or death." *DeSchaaf*, 141 Ariz. at 320, 686 P.2d at 1290.

¶ 11 In her special action petition to this court, the *DeSchaaf* claimant argued that the "substantial contribution" requirement of § 23–1043.01(A) conflicted with the principle in Article 18, Section 8, of the Arizona Constitution that injuries are compensable if caused "in part, or [are] contributed to" by necessary employment risks or dangers. *Id.* The court disagreed, explaining that although the legislature cannot alter legal causation as set forth in Article 18, Section 8, the "substantial contribution" requirement of § 23–1043.01(A) pertained only to medical causation—whether the industrial accident caused the injury. *Id.* at 321, 686 P.2d 1288, 686 P.2d at 1291. Legal causation in that case concerned whether the necessary risks or dangers of the claimant's employment caused her industrial accident (extreme stress). Medical causation concerned whether the stress caused her injury (the stroke). Because the "substantial contribution" requirement pertained only to the quantum of proof necessary to show that the industrial accident caused the injury, the court held that § 23–1043.01(A) did not conflict with Article 18, Section 8. *Id.*

¶ 12 Grammatico contends that § 23–1021(D), unlike § 23–1043.01(A), restricts legal causation and is therefore unconstitutional for the reasons explained in *DeSchaaf*. The Fund asserts that requiring a claimant to eliminate alcohol or drug use as a cause of an accident concerns medical causation, and § 23–1021(D) is therefore constitutional under *DeSchaaf*. We agree with Grammatico.

¶ 13 As previously explained, *supra* ¶ 8, legal causation is constitutionally established by showing that a necessary risk or danger of employment wholly or partially caused or contributed to an industrial accident. By denying compensation to a claimant who fails

to pass, refuses to cooperate with, or refuses to take a qualified alcohol or drug impairment test, unless the claimant proves that the alcohol or drug use did not contribute to the industrial accident, § 23–1021(D) imposes a restriction on legal causation that conflicts with Article 18, Section 8, of the constitution. Specifically, the injured worker is denied compensation for injuries unless he demonstrates that a necessary risk or danger of his employment *wholly* caused the industrial accident. If alcohol or drug use contributed to the accident, § 23–1021(D) denies compensation to the claimant, even if a necessary risk or danger of employment partially caused or contributed to the accident. *See Ford,* 145 Ariz. at 518, 703 P.2d at 462 (holding A.R.S. § 23–901.01 (1995), which listed factors concerning whether employment caused occupational disease, cannot be constitutionally interpreted to require proof that industrial exposure was sole or exclusive cause of disease).

¶ 14 Section 23–1021(D)'s restriction on legal causation is exemplified by applying the provision to Grammatico's claim. Under Article 18, Section 8, legal causation is established if a necessary risk or danger of Grammatico's employment wholly or partially caused or contributed to his accident (the fall from the stilts). Ariz. Const. art. 18, § 8; *DeSchaaf,* 141 Ariz. at 320–21, 686 P.2d at 1290–91. Medical causation exists if Grammatico's fall from the stilts caused his broken bones. *See DeSchaaf,* 141 Ariz. at 320–21, 686 P.2d at 1290–91. The parties agree that Grammatico's fall solely caused his injuries, so medical causation is not in dispute.

¶ 15 Applying § 23–1021(D), however, legal causation is established only if Grammatico proves that his drug use in the days before he worked did not contribute to his fall from the stilts. Thus, even if a necessary risk or danger inherent in working on drywall stilts partially caused or contributed to Grammatico's fall, he must be denied compensation if his drug use also contributed to the accident. Indeed, the ALJ found that while sufficient evidence may exist to conclude that Grammatico's drug use was not a substantial contributing cause of his fall, he was not entitled to compensatory benefits as he failed to demonstrate that his drug use was not a contributing cause of the fall. Because § 23–1021(D) abrogates claims for injuries partially caused or contributed to by necessary risks or dangers of employment, it impermissibly conflicts with Article 18, Section 8, of the constitution.[5] *Alvarado,* 148 Ariz. at 564, 716 P.2d at 21.

¶ 16 Our conclusion does not conflict with the supreme court's holding in *Ford,* as the Fund contends. In that case, this court held that a mine worker who was exposed to industrial irritants during his 22 years of employment was not entitled to compensation for a debilitating cough because A.R.S. § 23–901.01, which listed six causative factors for compensable diseases, precluded compensability for "mere aggravation of a preexisting disease." *Ford,* 145 Ariz. at 514–15, 703 P.2d at 458–59. The supreme court disagreed, holding that this interpretation of § 23–901.01 conflicted with the language in Article 18, Section 8, that requires compensation for accidents partially caused or contributed to by necessary risks or dangers of employment. *Id.* at 518, 703 P.2d at 462. The court additionally stated, however, that the legislature could constitutionally "specify[ ] the factors which are to be considered in determining whether industrial exposure is a cause of an occupational disease." *Id.*

5. This holding is consistent with cases concluding that an employee's intoxication or criminal infraction is insufficient standing alone to bar workers' compensation benefits. *See L.B. Price Mercantile Co. v. Indus. Comm'n of Ariz.,* 43 Ariz. 257, 266, 30 P.2d 491, 495 (1934) (concluding employee's violation of criminal laws at time of work-related traffic accident no bar to workers' compensation claim); *King v. Alabam's Freight Co.,* 38 Ariz. 205, 219, 298 P. 634, 639 (1931) (holding intoxication or wilful misconduct no bar to workers' compensation unless employee im- bibed to such an extent that he could not follow employment and therefore effectively abandoned it); *Producers Cotton Oil v. Indus. Comm'n of Ariz.,* 171 Ariz. 24, 25, 827 P.2d 485, 486 (App. 1992) ("Intoxication by itself is not a bar to workers' compensation in Arizona."); *Embree v. Indus. Comm'n,* 21 Ariz.App. 411, 413, 520 P.2d 324, 326 (1974) (determining that "simple intoxication" insufficient to bar workers' compensation recovery unless employee too intoxicated to follow employment).

¶ 17 The Fund argues that like the provision at issue in *Ford*, § 23–1021(D) permissibly regulates the proof needed to show that the injury arose out of the job rather than the claimant's alcohol or drug use. We disagree. Although the *Ford* court did not discuss or distinguish legal and medical causation, it is clear that the type of restrictive regulation it considered constitutionally permissible related to medical causation. Earlier in the opinion, the court held that industrial exposure to irritants can be a compensable industrial "accident." *Ford*, 145 Ariz. at 517, 703 P.2d at 461 (quoting with approval *Marquez v. Indus. Comm'n of Ariz.*, 110 Ariz. 273, 275, 517 P.2d 1269, 1271 (1974) (describing each impact or inhalation of silicon dust as a miniature accident leading to the ultimate disability)). Thus, by stating that the legislature could permissibly specify the factors to be considered in deciding whether industrial exposure (the accident) is a cause of an occupational disease (the injury), the court was discussing restrictions on medical causation.

¶ 18 The Fund finally argues that strong public policy reasons exist to implement § 23–1021(D). We agree with the Fund that drug and alcohol use have no place in the working world and should not be encouraged or rewarded. However, we cannot ignore that our constitutional system for workers' compensation requires the payment of benefits if a necessary risk or danger of employment partially caused or contributed to an industrial accident, without consideration of any fault by the injured employee. Thus, unless and until the constitution is changed, the legislature cannot abrogate claims for workers' compensation for injuries wholly or partially caused or contributed to by necessary employment risks or dangers solely because an employee fails to pass, fails to cooperate with, or refuses to take a drug or alcohol test.

¶ 19 Because § 23–1021(D) can be applied to deny benefits without violating Article 18, Section 8, of the Arizona Constitution if necessary employment risks or dangers did not wholly or partially cause or contribute to an industrial accident, the statutory provision is not unconstitutional on its face. *See Phelps*

*Dodge Corp. v. Ariz. Elec. Power Co-op., Inc.*, 207 Ariz. 95, 110, ¶ 46, 83 P.3d 573, 587–88 (App.2004). However, because evidence in this case suggested that necessary risks and dangers of working on drywall stilts partially caused or contributed to Grammatico's industrial accident, § 23–1021(D) is unconstitutional as applied in this case.

### RESPONSE TO DISSENT

¶ 20 We would be remiss if we did not comment at least briefly on our colleague's dissent. He first posits that the legislature can properly define "a necessary risk or danger of … employment," as used in Article 18, Section 8, of the Arizona Constitution, to exclude workplace actions undertaken by an employee who had recently used illegal drugs. *See infra* ¶ 26. Such a restrictive definition, however, injects fault into the no-fault workers' compensation system and effectively abrogates claims for injuries partially caused or contributed to by workplace dangers. *See supra* ¶ 15. If the Dissent is correct, the legislature could circumvent Article 18, Section 8, merely by defining "necessary risk or danger" to exclude a host of injuries if caused in part by an employee's reckless or negligent actions.

¶ 21 The Dissent also contends that Grammatico's drug use during the weekend prior to his workplace fall is analogous to a meat cutter's act of using a meat knife to intentionally cut off his hand, which is non-compensable as a self-inflicted injury. *Infra* ¶ 28. *See* A.R.S. § 23–1021(A) (providing compensation for accidental workplace injuries and excluding compensation for self-inflicted injuries). The analogy is flawed.

¶ 22 For an injury to be "self-inflicted" and not "accidental," the claimant must have clearly expected that his or her actions would result in injury. *Glodo v. Indus. Comm'n of Ariz.*, 191 Ariz. 259, 262–64, 955 P.2d 15, 18–20 (App.1997); *Rural Metro Corp. v. Indus. Comm'n of Ariz.*, 197 Ariz. 133, 135–36, ¶ 9, 3 P.3d 1053, 1055–56 (App.1999). Thus, in *Glodo*, we held that a claimant's injury that occurred when he intentionally punched a workplace metal door in anger was an expected and anticipated result and was there-

fore a self-inflicted, non-compensable injury. 191 Ariz. at 263–64, 955 P.2d at 19–20.

¶ 23 While the meat cutter in the Dissent's hypothetical necessarily expected that his intentional slash of the knife would injure his hand, the ALJ did not find, and the evidence does not suggest, that Grammatico expected that his drug use in the days and hours before his work shift would result in a fall from the drywall stilts. Indeed, we must presume that Grammatico did not intend to injure himself by ingesting drugs. *Rural Metro,* 197 Ariz. at 135, ¶ 8, 3 P.3d at 1055 ("We presume . . . that a claimant did not intend to injure himself or herself, regardless of how inadvisable, careless, or even reckless the claimant's conduct may have been."). This case is more akin to the situation in *Rural Metro,* which involved a claimant who injured herself after she intentionally ignored her physician's restrictions on certain physical activities. *Id.* We held that the claimant's actions, while arguably careless and reckless, were "[not] predictably certain to result in injury," and her injury was therefore accidental rather than self-inflicted. *Id.* at 136, ¶ 9, 3 P.3d at 1056; *see also Glodo,* 191 Ariz. at 264, 955 P.2d at 20 (reasoning that a claimant's injury sustained when he or she assaults a co-worker is not self-inflicted as "the outcome is not nearly as predictable as when the claimant slams his fist into a metal freezer door").

¶ 24 In short, as a matter of long-standing public policy and constitutional mandate, the fact that an employee acts in a manner that increases the risk of a workplace injury that is wholly or partially caused or contributed to by a necessary risk or danger of employment, does not, standing alone, affect that employee's right to collect workers' compensation benefits.

## CONCLUSION

¶ 25 For the foregoing reasons, A.R.S. § 23–1021(D) violates Article 18, Section 8, of the Arizona Constitution if applied to deprive workers of compensatory benefits for injuries "caused in whole, or in part, or . . . contributed to" by necessary employment risks and dangers if the injured worker fails to pass, fails to take, or refuses to cooperate with a

qualified alcohol or drug test. Because the ALJ unconstitutionally applied § 23–1021(D) to deny compensatory benefits to Grammatico, we set aside the award.

CONCURRING: WILLIAM F. GARBARINO, Judge.

BARKER, Judge, dissenting.

### I.

¶ 26 My focus on this constitutional question differs from that of the majority. Specifically, the legislature could properly conclude that no act that is otherwise required in the work place is a *"necessary* risk or danger of such employment, or a *necessary* risk or danger inherent in the nature thereof," Ariz. Const. art. 18, § 8 (emphasis added), when undertaken by a person whose actions are influenced by having intentionally and voluntarily consumed illegal drugs.

¶ 27 I appreciate that the act of *being on stilts* for this employee was a "necessary risk" of his employment. But being on stilts *while under the influence of illegal drugs* was not a "necessary risk." The legislature could justifiably determine that it is appropriate to look at the entirety of the risk when it is shown that the necessary element of the risk (being on stilts) cannot be factually separated from the unnecessary element of the risk (being on stilts while under the influence of illegal drugs). This is particularly true when the unnecessary element of the risk was voluntarily and intentionally undertaken. Thus, the legislature can be constitutionally justified in concluding that no "part" of being on stilts while under the influence of illegal drugs was a "necessary risk." An example and a reference to our earlier cases help make the point.

¶ 28 If one is employed as a meat cutter, a "necessary risk or danger of such employment" is the use of a knife to cut meat. However, if a meat cutter, while using the knife in the process of cutting meat, intentionally and voluntarily decides to cut off his hand, his conduct is not constitutionally protected. The legislature need not separate the necessary *part* of the risk (using a knife) from the combined *whole* represented by all

aspects of the risk (using the knife to intentionally cut off one's hand while at work).

¶ 29 The exception for self-inflicted injuries has been expressly called out by the legislature. A.R.S. § 23–1021(A) (Supp.2003) (granting compensation for injury in the course of employment "unless the injury was purposely self-inflicted"). Recognizing the statute, the Arizona Supreme Court ruled that if an injury is self-inflicted, it is uncompensable, even though it would otherwise be in the course of employment. *Lopez v. Kennecott Copper Corp.*, 71 Ariz. 212, 213, 225 P.2d 702, 703 (1950). More recently, the Arizona Court of Appeals upheld the Industrial Commission's refusal to compensate an employee who had suffered an injury to his hand when he intentionally struck a metal door at work. *Glodo v. Indus. Comm'n*, 191 Ariz. 259, 260, 955 P.2d 15, 16 (App.1997). The *Glodo* court held that this injury was not an accident because the employee should have known that punching his hand into a metal door would result in injury. *Id.* at 263, 955 P.2d at 19.

¶ 30 Though Grammatico did not intentionally and voluntarily jump from his stilts, he voluntarily and intentionally ingested three to four lines of methamphetamine within nine hours of reporting to work.[6] It does not take an imaginative mind to consider that such conduct is a "self-inflicted" injury just waiting to happen. That the legislature thought so is borne out in the legislative history. *See* Min. of Ariz. State Senate Comm. on Professions & Employment, S.B. 1246, 42nd Leg., 2nd Sess. (Feb. 7, 1996) (testimony presented to the Senate that "according to the National Institute on Drug Abuse, drug users are 3.6 times as likely to have on-the-job accidents

as are non-drug users, and drug users are 5 times more likely than non-drug users to file workers' compensation claims"). A 360% increase in "on-the-job accidents," caused by illegal drug use, is certainly a basis to review such conduct. It is certainly reasonable for the legislature to conclude that the term "necessary risk" does not include conduct at the workplace while under the influence of illegal drugs.[7]

¶ 31 We have upheld statutes in other constitutional areas when the statute represented a reasonable legislative interpretation of the constitution's otherwise explicit terms. For instance, Article 2, Section 6, of the Arizona Constitution states: "Every person may freely speak, write, and publish on *all* subjects...." (Emphasis added.) The word "all" is both explicit and broad. Yet we have upheld legislative interpretations in which the legislature has placed reasonable time, place, and manner restrictions on the freedom of speech in some instances. *See Empress Adult Video & Bookstore v. City of Tucson*, 204 Ariz. 50, 56, ¶ 9, 59 P.3d 814, 820 (App.2002) (stating that the Arizona Supreme Court has made it "clear that the protection afforded by article II, § 6 does not foreclose limited governmental regulation") (citing *Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n*, 160 Ariz. 350, 358, 773 P.2d 455, 463 (1989)).

¶ 32 Here, the legislature can constitutionally give a reasonable construction to the term "necessary risk" that does not include conduct in the workplace that is affected by the use of illegal drugs. This is particularly true when the employee has the opportunity to show that the influence of illegal drugs did

---

6. Grammatico testified that he ingested between three and four lines of methamphetamine between 8:00 p.m. and 10:00 p.m. Sunday night and reported to work at 5:00 a.m. on Monday. The accident occurred on Monday.

7. The majority indicates that its holding is "as applied in this case." *Supra* ¶ 1. The majority then enlarges its holding to a person who "fails to pass, *fails to cooperate with or refuses to take* a drug *or alcohol* test." *Supra* ¶ 18 (emphasis added).

   The only matter at issue here relates to an employee who has taken and failed a test for illegal drugs under A.R.S. § 23–1021(D)(1)

(Supp.2003). The circumstances dealing with any aspect of alcohol use (A.R.S. § 23–1021(D)(1)) or an alcohol test (A.R.S. § 23–1021(D)(2) and (3)) are not at issue. Neither is there an issue in this case in which an employee has refused to take or failed to cooperate with a test for illegal drugs. As the majority recognizes, the ALJ only applied § 23–1021(D)(1). *Supra* ¶ 5 ("Applying § 23–1021(D)(1), the ALJ found the claim noncompensable...."). My analysis is limited solely to the facts and issue presented in this case: an employee who failed a test for illegal drugs and to whom § 23–1021(D)(1) applies.

not contribute to the conduct at issue. Although the worker's compensation statutes must be construed liberally to protect employees under the constitutional mandate, "[a] burden or liability not within the terms or spirit of the law is not to be imposed upon industry." *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 402, 158 P.2d 511, 513 (1945).

## II.

¶ 33 The majority contends that this analysis, based on a legislative decision of what may constitute a "necessary risk," represents a "restrictive definition" that "injects fault" into the worker's compensation system and may act to "exclude a host of injuries if caused in part by an employee's reckless or negligent actions." *Supra* ¶ 20. The majority also submits that this case is akin to *Rural Metro Corp. v. Industrial Commission*, 197 Ariz. 133, 3 P.3d 1053 (App.1999). I disagree with the majority's view.

### A.

¶ 34 As to "injecting fault," if the "necessary risk" is defined as being on stilts, as opposed to being on stilts while under the influence of illegal drugs, then the majority is clearly correct. Our cases have long held that "fault remains no consideration" when determining whether compensation is due. *Aitken v. Indus. Comm'n*, 183 Ariz. 387, 393, 904 P.2d 456, 462 (1995). This dissent has no quarrel with these holdings.

¶ 35 Our cases also hold, however, that certain employee conduct is not compensable even though occurring at work. *See, e.g., Goodyear Aircraft Corp.*, 62 Ariz. at 402, 158 P.2d at 513 (finding noncompensable an employee's injuries when engaging in conduct at work that had been specifically precluded); *Dependable Messenger, Inc. v. Indus. Comm'n*, 175 Ariz. 516, 518–19, 858 P.2d 661, 663–64 (App.1993) (employee injuries from personally-motivated fight during work hours not compensable); *Scheller v. Indus. Comm'n*, 134 Ariz. 418, 421, 656 P.2d 1279, 1282 (App.1982) (noncompensable injuries

found when security guard chased burglars off premises after being told not to do so); *Anderson Clayton & Co. v. Indus. Comm'n*, 125 Ariz. 39, 42, 607 P.2d 22, 25 (App.1979) (horseplay at work is a "substantial deviation" from employment and results in noncompensability of injuries). Obviously, if cast strictly in terms of "fault," each of these decisions would be in doubt as it was conduct of the employee, contrary to some directive or policy, which resulted in the injuries being noncompensable.[8] Thus, the concept of fault cannot cast so broad a net that it overwhelms the other terms of the constitutional mandate.

¶ 36 The question here is whether performing a required task at work while under the influence of illegal substances is a "necessary risk" of employment. That is the language of the constitutional mandate. Ariz. Const. art. 18, § 8. We may not discard it.

### B.

¶ 37 The majority also posits that by permitting the legislature to use a "restrictive definition" of the constitutional phrase "necessary risk" there will be a "host of injuries" based on "reckless or negligent" employee conduct that will be excluded from coverage. *Supra* ¶ 20.

¶ 38 First, when construing a statute to determine whether it complies with the constitution, we have a duty to give it a reading that will promote its constitutionality. *See Arizona Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981) (stating that courts have a "duty to construe a statute so as to give it, if possible, a reasonable and constitutional meaning"). We do not simply view a statute in terms of plausible interpretations that may be unconstitutional; rather the rule is that "[w]e will not declare an act of the legislature unconstitutional unless we are satisfied *beyond a reasonable doubt* that the act is in conflict with the federal or state constitutions." *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982) (emphasis added). I suggest that the majori-

---

8. For a discussion of Arizona cases dealing with the concept of fault in various settings see Roger

A. Schwartz, *Look Ma, No Fault!*, ARIZONA ATTORNEY, Apr. 2000, at 26–32.

ty has not followed this heightened standard of review—that of "beyond a reasonable doubt"—in analyzing this statute. The majority's interpretation is clearly plausible, but it is not the only interpretation that the language of the constitution and the statute bear. In such circumstances, we must adopt a constitutional interpretation and reject the unconstitutional interpretation. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *United States v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980) ("It is well settled that this Court will not pass on the constitutionality of an Act of Congress if a construction of the statute is fairly possible by which the question may be avoided.").

¶ 39 Second, this is a focused statute. It requires that the employer "*establish* [ ] a policy of drug testing [in compliance with the statute], *is maintaining that policy on an ongoing manner* and, before the date of the employee's injury, the employer files the written certification with the industrial commission" that it has provided "*notification to its employees* ... that the employer is maintaining that policy." A.R.S § 23–1021(D) & (F) (Supp.2003) (emphasis added). If the employer "had actual knowledge of and permitted or condoned the ... employee's unlawful use of any controlled substance," the statute does not apply. A.R.S. § 23–1021(E) (Supp.2003). If the "employee's use of any unlawful substance ... was not a contributing cause of the employee's injury," the statute also does not apply. A.R.S. § 23–1021(D)(1).

¶ 40 This statute is not an attack on "fault" by a legislature seeking to thwart its constitutional mandate. This is a narrow, focused statute that may be upheld on the basis that the intentional and voluntary use of illegal drugs does not constitute a "necessary risk" of employment. The only "host of injuries" that this statute will leave uncompensated

are those in which an employee, after being specifically notified of a drug testing program that his employer has implemented and is maintaining on an on-going basis, nonetheless voluntarily and intentionally uses illegal drugs which then contribute to his or her injuries at work.

### C.

¶ 41 The majority also asserts that the *Rural Metro* case is more apt for analysis. 197 Ariz. 133, 3 P.3d 1053. In *Rural Metro* a paramedic went back to work prior to the time that her doctor released her. *Id.* at 134, ¶ 3, 3 P.3d at 1054. She said that "she 'had no choice' because of financial reasons." *Id.* She injured herself when lifting a patient. *Id.* at 134, ¶ 4, 3 P.3d at 1054. The court found that the injury was not "purposely self-inflicted." *Id.* at 136, ¶ 9, 3 P.3d at 1056.

¶ 42 The majority relies on the presumption stated in *Rural Metro* of the lack of intent to injure oneself "regardless of how inadvisable, careless, or even reckless the claimant's conduct may have been." *Id.* at 135, ¶ 8, 3 P.3d at 1055. The conduct here (being under the influence of illegal substances while performing tasks at work) was intentional, voluntary, and unlawful—not merely "inadvisable, careless, or even reckless." With all due respect, the intentional and voluntary use of illegal drugs within nine hours of reporting for work, all the while knowing that the employer has implemented a mandatory and on-going drug testing program to stop such use, is a significantly different fact pattern than going back to work too soon "because of financial reasons."

¶ 43 Even if *Rural Metro* were the better analogy (a proposition I do not accept), the primary point is that by enacting A.R.S. § 23–1021(D) the legislature has called out a rational scenario for what is not a "necessary risk" of employment. This enactment of A.R.S. § 23–1021(D), calling out the use of illegal drugs when the employer has instituted and is maintaining a drug testing program, is similar but certainly not identical to the legislature calling out self-inflicted injury for exclusion from the worker's compensation scheme. Neither is expressly referenced in the Arizona Constitution. Both are within

20

the constitution's parameters. The legislature is not bound by our non-constitutional holdings. To disagree with our earlier non-constitutional decisions (such as *Rural Metro*) is completely within the legislature's prerogative. In my view, however, A.R.S. § 23–1021(D) has absolutely no impact on the *Rural Metro* holding even when viewed as the majority construes it. A decision upholding A.R.S. § 23–1021(D) as applied here would do no violence to the holding or principles in *Rural Metro.*

### III.

¶ 44 For the foregoing reasons, I would find A.R.S. § 23–1021(D) constitutional as applied. Accordingly, I respectfully dissent.