SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| DAVID C. GRAMMATICO, | ) Arizona Supreme Court |
| | ) No. CV-04-0197-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-IC 01-0117 |
| THE INDUSTRIAL COMMISSION, | ) |
| | ) |
| | ) ICA Claim |
| Respondent, | ) No. 20001-390571 |
| | ) |
| | ) Carrier |
| AROK, INC., | ) No. AZ 00008522 |
| | ) |
| Respondent Employer, | ) |
| | ) |
| | ) |
| | ) |
| STATE COMPENSATION FUND, | ) |
| | ) |
| Respondent Carrier. | ) **CONSOLIDATED WITH** |
| | ) |
| _____) | |
| | ) |
| AUSTIN KOMALESTEWA, | ) Arizona Supreme Court |
| | ) No. CV-04-0364-PR |
| Petitioner Employee, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-IC 03-0041 |
| THE INDUSTRIAL COMMISSION, | ) |
| | ) ICA Claim |
| | ) No. 20013-370241 |
| Respondent, | ) |
| | ) Carrier |
| STONEVILLE PEDIGREE SEED, | ) No. WC-905 367138 |
| | ) |
| Respondent Employer, | ) |
| | ) |
| | ) |
| WAUSAU INSURANCE COMPANIES, | ) **O P I N I O N** |
| | ) |
| Respondent Carrier. | ) |
| _____) | |

---

### GRAMMATICO v. THE INDUSTRIAL COMMISSION

Industrial Commission Award
J. Matthew Powell, Administrative Law Judge
**AWARD SET ASIDE**
Court of Appeals, Division One
208 Ariz. 10, 90 P.3d 211 (App. 2004)
**AFFIRMED**

---

### KOMALESTEWA v. THE INDUSTRIAL COMMISSION

Industrial Commission Award
Stephen W. Pogson, Administrative Law Judge
**AWARD SET ASIDE**
Court of Appeals, Division One
209 Ariz. 2ll, 99 P.3d 26 (App. 2004)
**REVERSED**

---

### ATTORNEYS FOR GRAMMATICO v. THE INDUSTRIAL COMMISSION

JEROME, GIBSON, STEWART,
FRIEDMAN, STEVENSON & ENGLE, P.C.                          Phoenix
    By   Joel F. Friedman
Attorneys for David G. Grammatico

STATE COMPENSATION FUND                                    Phoenix
    By   James F. Crane, Vice President and General
        Counsel
        James B. Stabler
Attorneys for AROK, Inc. and State Compensation Fund

JONES, SKELTON & HOCHULI, P.L.C.                           Phoenix
    By   Randall H. Warner
Attorneys for Amici Curiae American Insurance Association,
Arizona Association of Industries, Arizona Chamber of Commerce,
Arizona Restaurant and Hospitality Association, Arizona Rock
Products Association, Greater Phoenix Chamber of Commerce,
National Federation of Independent Business Legal Foundation,
and Tucson Metropolitan Chamber of Commerce

STEPTOE & JOHNSON, LLP                                     Phoenix
    By   Wendy G. Briggs
Attorneys for Amicus Curiae American Insurance Association

LOW & CHILDERS, P.C.                                        Phoenix
      By   S. David Childers
Attorneys for Amicus Curiae The Property Casualty Insurers
Association of America

ADELMAN GERMAN PLC                                       Scottsdale
      By   Daniel J. Adelman
Attorneys for Amicus Curiae Arizona Trial
Lawyers Association

HARALSON, MILLER, PITT, FELDMAN & McANALLY P.L.C          Tucson
      By   Stanley G. Feldman
Attorneys for Amicus Curiae Southern Arizona
Workers' Compensation Claimants Association

_____

**ATTORNEYS FOR KOMALESTEWA v. THE INDUSTRIAL COMMISSION**

Don A. Fendon                                              Phoenix
Attorney for Austin Komalestewa

CROSS & LIEBERMAN P.A.                                     Phoenix
      By   Donald L. Cross
Attorneys for Stoneville Pedigree Seed and Wausau
Insurance Companies

LOW & CHILDERS, P.C.                                       Phoenix
      By   S. David Childers
Attorneys for Amicus Curiae Property Casualty Insurers
Association of America

ADELMAN GERMAN PLC                                       Scottsdale
      By   Daniel J. Adelman
Attorneys for Amicus Curiae Arizona Trial
Lawyers Association

HARALSON, MILLER, PITT, FELDMAN & McANALLY, P.L.C         Tucson
      By   Stanley G. Feldman
Attorneys for Amicus Curiae Southern Arizona
Workers' Compensation Claimants Association

_____

**R Y A N**, Justice

¶1        Article 18, Section 8 of the Arizona Constitution mandates that an employee receive workers' compensation if the employee is injured in "any accident arising out of and in the course of . . . employment," and the injury "is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer or its agents or employee or employees to exercise due care."  The issue in these consolidated matters[1] requires us to determine whether Article 18, Section 8 precludes the legislature from requiring proof that the presence of alcohol or illegal drugs in an injured worker's system was not a contributing cause of the accident before workers' compensation benefits may be awarded.

**I**

**A**

¶2        David C. Grammatico, who installed metal trim on building exteriors for AROK, Inc., performed his work on drywall stilts approximately forty-two inches in height.  After working for most of his shift on stilts, Grammatico fell while walking, on stilts, through a cluttered area of the job site.  He broke his right wrist and left knee in the fall.

---

[1]    By separate order, we consolidated these cases for the purposes of this opinion.

¶3        Grammatico admitted that he had smoked marijuana and ingested methamphetamine on the previous two days, days he was not required to be at work.  His post-accident urine test showed positive results for marijuana, amphetamine, and methamphetamine, all of which are illegal to use in Arizona. *See, e.g.*, Ariz. Rev. Stat. ("A.R.S.") § 13-3401 (Supp. 2003). Grammatico's employer maintained a certified drug-testing policy under A.R.S. § 23-1021(D) (Supp. 2004).  Under the terms of the statute, if an employer maintains such a policy, "an employee's injury . . . shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable . . . if the employee fails to pass . . . a drug test for the unlawful use of any controlled substance," A.R.S. § 23-1021(D), unless the employee proves that the use of an unlawful substance "was not a contributing cause of the employee's injury."  A.R.S. § 23-1021(D)(1).  When Grammatico's employer's insurer denied him benefits, he requested a hearing before the Industrial Commission.

¶4        After the hearing, the administrative law judge found Grammatico's claim noncompensable because Grammatico failed to prove that his use of unlawful controlled substances "was not even a 'slight contributing cause'" of his injuries.  Grammatico then filed a statutory special action in the court of appeals. *See* A.R.S. § 23-951(A) (1995).  The court of appeals set aside

the judge's award, holding that A.R.S. § 23-1021(D) violates Article 18, Section 8 of the Arizona Constitution. *Grammatico v. Indus. Comm'n*, 208 Ariz. 10, 16, ¶ 25, 90 P.3d 211, 217 (App. 2004). Judge Barker dissented. *Id.* at 16-20, ¶¶ 26-44, 90 P.3d at 217-21.

B

¶5 Austin Komalestewa worked for Stoneville Pedigree Seed. Shortly after he began work one morning, Komalestewa, as he and his fellow workers often were required to do, tried to fix a conveyor belt that had "bogged down." He crawled under the belt to put pressure on the drum, and his arm became caught in the belt, resulting in serious injury. Komalestewa's employer's insurance carrier denied his workers' compensation claim because blood tests taken at the hospital shortly after the accident revealed alcohol in his blood. Komalestwa protested the denial of benefits, and hearings were conducted before an administrative law judge at the Industrial Commission.

¶6 During the hearing, Komalestwa admitted that he had four mixed drinks containing vodka the night before the accident. An expert testified that based on blood drawn after the accident, Komalestewa's blood-alcohol level at the time of the accident would have been at least 0.176 percent. However, Komalestewa's wife, the employer's site manager, and a co-worker testified that Komalestewa did not appear intoxicated the

morning of the accident.

¶7        The administrative law judge initially determined that Komalestewa had sustained a compensable injury.  Subsequently, however, upon request for review by the insurance carrier, *see* A.R.S. §§ 23-942(D), -943(A)-(B) (1995), the judge determined that the claim was noncompensable under A.R.S. § 23-1021(C) because Komalestewa's intoxication had contributed to the accident.  That section provides that "[a]n employee's injury . . . shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable . . . if the impairment of the employee is due to the employee's use of alcohol . . . and is a substantial contributing cause of the employee's personal injury." *Id*. "'Substantial contributing cause' means anything more than a slight contributing cause." *Id*. § 23-1021(H)(2).

¶8        Komalestewa filed a statutory special action in the court of appeals.  In affirming the award, another panel of that court rejected the majority's approach in *Grammatico* and held that A.R.S. § 23-1021(C) did not violate Article 18, Section 8 of the Arizona Constitution. *Komalestewa v. Indus. Comm'n*, 209 Ariz. 211, 219, ¶ 31, 99 P.3d 26, 34 (App. 2004).

C

¶9        In *Grammatico*, Arok and the State Compensation Fund petitioned the Court for review, and Komalestewa petitioned for

review in his matter.  We granted review in both cases because of the conflict between the panels of the court of appeals on the applicability of Article 18, Section 8 and because these cases concern a matter of statewide importance.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

**III**

¶10    Before statehood, all Arizona employees injured by their employers' negligence could bring common law tort actions against them.  *See Consol. Arizona Smelting Co. v. Ujack*, 15 Ariz. 382, 383-84, 139 P. 465, 466 (1914); *Red Rover Copper Co. v. Indus. Comm'n*, 58 Ariz. 203, 210, 118 P.2d 1102, 1105 (1941); *Arizona Workers' Compensation Handbook* § 1.1, at 1-1 (Ray J. Davis et al. eds., 1992) (hereinafter "Davis").  But success with such actions was rare because not only did employees have to show that the employers were negligent and that that negligence had caused the injuries, but also because such actions were "restricted further by the 'unholy trinity' of common law defenses – contributory negligence, assumption of risk, and the fellow servant rule."  William L. Prosser, *Law of Torts* § 80, at 526-27 (4th ed. 1971); *see also Red Rover*, 58 Ariz. at 210, 118 P.2d at 1105.

¶11    "For twenty-five years, labor interests had unsuccessfully lobbied for an employer's liability act in the

territorial legislature." Gordon M. Bakken, *The Arizona Constitutional Convention of 1910*, 1978 Ariz. St. L.J. 1, 18. Responding to those calls, the framers of the Arizona Constitution in 1910 enacted Article 18, which included a wide range of measures to protect labor. *See id*. at 18-20. Article 18 abolished the fellow servant doctrine and substantially curtailed the defenses of contributory negligence and assumption of risk. *See* Ariz. Const. art. 18, §§ 4, 5; *Heimke v. Munoz*, 106 Ariz. 26, 28-30, 470 P.2d 107, 109-11 (1970).

¶**12** Although Article 18, Sections 4 and 5 restricted employers' common law defenses to employee negligence actions, neither section affected the basic requirement that the employee prove negligence and causation, an often long and expensive process for both employees and employers. *See* Davis, §§ 1.1, at 1-1 & 1.3.1, at 1-6. To address this issue, Delegate Everett E. Ellinwood, "an attorney who had served the railroads and the Phelps Dodge Arizona interests," John D. Leshy, *The Making of the Arizona Constitution*, 20 Ariz. St. L.J. 1, 35 (1988), introduced Proposition 72 at the constitutional convention, which proposed to require the legislature to enact a "compulsory workmen's compensation law." *The Records of the Arizona Constitutional Convention of 1910*, 65-66 (John S. Goff ed., 1991) (hereinafter "Goff"). Proposition 72 was approved and

adopted by the convention delegates as Article 18, Section 8.[2]
*Id*. at 549, 555, and 886.

**¶13**    After Arizona became a state in 1912, the first session of the Arizona Legislature implemented the constitutional mandate by adopting a "Compulsory Compensation Law." *Ujack*, 15 Ariz. at 384, 139 P. at 466. The present version of the statutory scheme is found in A.R.S. §§ 23-901 to 23-1091 (1995 & Supp. 2003).

**¶14**    Article 18, Section 8 and the implementing statutes provide workers in Arizona with an alternative to common law tort actions against employers. Under this "new civil action," *Ujack*, 15 Ariz. at 387, 139 P. at 467, neither the employee's

---

[2]    As originally enacted, Article 18, Section 8 directed the legislature to

> enact a Workmen's Compulsory Compensation law applicable to workmen engaged in manual or mechanical labor in such employments as the Legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk, or danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents, or employee, or employees, to exercise due care, or to comply with any laws affecting such employment; Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution.

*Goff* at 1435-36.

- 10 -

nor the employer's negligence would affect compensation. *See Davis*, pt. I, at I-1.

¶15 This Court recognized that the new civil action was simply an alternative to the still-existing common law tort action. In *Industrial Commission v. Crisman*, for example, we held that the legislature's attempt to require pre-injury election of either workers' compensation or the common law tort action was unconstitutional under Article 18, Section 8 because it did not provide workers with the constitutionally mandated option to elect, after the injury, to accept compensation or, instead, sue the employer. 22 Ariz. 579, 584, 199 P. 390, 392 (1921); *see also Ujack*, 15 Ariz. at 388, 139 P. at 468.

¶16 In 1925, the voters amended Article 18, Section 8[3] to provide for pre-injury election, thus creating a constitutional exception to Article 18, Section 6, the anti-abrogation clause. *Kilpatrick v. Superior Court*, 105 Ariz. 413, 418-19, 466 P.2d 18, 23-24 (1970). As *Kilpatrick*, 419 Ariz. at 419, 466 P.2d at 24, and *Ruth v. Industrial Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971), demonstrate, Article 18, Section 6 still protects an employee's right to maintain a common law negligence action against his or her employer. That right, however, is

---

[3] The amended version of Article 18, Section 8 provided that employees "engaged in . . . private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury."

subject to the exception provided in Article 18, Section 8 - that the legislature may enact a law with the nearly irrebutable presumption that an employee accepted the alternative of workers' compensation benefits unless the employee made a pre-accident election to reject workers' compensation and retain his or her common law rights.

¶17      Under the Arizona Constitution, therefore, absent an employee's express rejection of workers' compensation, a no-fault system has replaced the prior fault-based tort system. *See Stoecker v. Brush Wellman, Inc*., 194 Ariz. 448, 451, ¶ 11, 984 P.2d 534, 537 (1999) ("The underlying principle of the compensation system is a trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for accidental injuries sustained in work-related accidents."); *see also Pressley v. Indus. Comm'n,* 73 Ariz. 22, 28, 29, 236 P.2d 1011, 1015-16 (1951).

## IV

¶18      We now turn to whether A.R.S. § 23-1021(D) and A.R.S. § 23-1021(C) violate Article 18, Section 8, as Grammatico and Komalestewa contend.  We begin our analysis with a brief summary of a few principles underlying workers' compensation law.

## A

¶19      To receive workers' compensation benefits, an injured employee must demonstrate both legal and medical causation.

- 12 -

*DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App. 1984) (citing 1B Arthur Larson, *Workmen's Compensation Law* § 38.83 (1982)) (additional citations omitted).[4] Article 18, Section 8 addresses legal causation. *See DeSchaaf*, 141 Ariz. at 321, 686 P.2d at 1291. As relevant to these cases, Section 8 divides legal causation into three elements. First, the employee must have been acting in the course of employment. Second, the employee must have suffered a personal injury from an accident arising out of and in the course of such employment. Third, the resulting injury must have been caused in whole or in part, or contributed to, by a necessary risk of the employee's employment, or a necessary risk or danger inherent in the nature of that employment or the employer's lack of due care.

¶20    Medical causation, in contrast, is established by showing that the accident caused the injury. *See id*. By its plain terms, Article 18, Section 8 does not limit the legislature's power to enact legislation affecting medical causation. *Cf. Ford v. Indus. Comm'n*, 145 Ariz. 509, 518, 703 P.2d 453, 462 (1985) (stating that the constitution does not prevent the legislature from enacting specific factors to be considered "in determining whether industrial exposure is a cause of an occupational disease," thus implicitly recognizing

---

[4]    The current version of Larson also discusses this principle. *See* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 46.03[1], at 46-6 (2004).

that the legislature could enact standards for medical causation).

¶21    Consequently, the legislature has some latitude to establish the requisite medical causation for workers' compensation recovery.  In contrast, however, the legislature may not define legal causation in a way that conflicts with Article 18, Section 8 because the legislature "cannot enact laws which will supersede constitutional provisions adopted by the people."  *Kilpatrick*, 105 Ariz. at 415-16, 466 P.2d at 20-21.

**B**

¶22    The resolution of this case, therefore, hinges upon whether A.R.S. § 23-1021(C) and (D) impermissibly define legal causation by requiring proof that the presence of alcohol or illegal drugs in a claimant's system did not contribute to the industrial accident.  Turning first to A.R.S. § 23-1021(D)-(D)(1), those subsections provide that an employee who fails to pass, refuses to cooperate with, or refuses to take a qualified alcohol or drug test, is prohibited from receiving compensation, even if his or her injury would otherwise require compensation, unless the employee can prove that the intoxication or unlawful drug use was not a contributing cause of the accident.

¶23    The majority in *Grammatico* concluded that A.R.S. § 23-1021(D) impermissibly restricts legal causation.  208 Ariz. at 13-14, ¶¶ 12-15, 90 P.3d at 214-15.  We agree.  Under Article

18, Section 8, an employee demonstrates legal causation by showing that a necessary risk or danger of employment caused or contributed to the industrial accident "in whole or *in part*." (Emphasis added.)   Section 23-1021(D), however, denies compensation to an injured worker unless the worker proves that a necessary risk or danger of employment *wholly* caused the accident.   Specifically, if alcohol or illegal drug use contributed even slightly to the accident, section 23-1021(D) denies compensation to the employee, *even if* a necessary risk or danger of employment partially or substantially caused or contributed to the accident.   Article 18, Section 8 does not permit the legislature to limit legal causation in that manner. *See Ford*, 145 Ariz. at 518, 703 P.2d at 462 (holding that A.R.S. § 23-901.01 (1985), which lists factors that indicate whether employment caused an occupational disease, cannot be constitutionally interpreted to require proof that the disease was *solely* or *exclusively* caused by the industrial exposure).

C

¶**24**      Section 23-1021(C), the statute at issue in *Komalestewa*, similarly runs afoul of Article 18, Section 8. That statute provides that

> [a]n employee's injury or death shall not be considered
> a personal injury by accident arising out of and in the
> course of employment and is not compensable pursuant to
> this chapter if the impairment of the employee is due
> to the employee's use of alcohol . . . and is a

- 15 -

> substantial contributing cause of the employee's
> personal injury or death. This subsection does not
> apply if the employer had actual knowledge of and
> permitted, or condoned, the employee's use of alcohol
> . . . .

*Id.* (footnote omitted).

¶25    Although Article 18, Section 8 requires compensation if a necessary risk or danger of employment partially caused or contributed to the accident, section 23-1021(C) denies benefits if alcohol or drug use contributed to the accident. Thus, even if an accident was caused, in part, by a necessary risk or danger of employment, A.R.S. § 23-1021(C) would preclude benefits if alcohol was "anything more than a slight contributing cause" of the injury. A.R.S. § 23-1021(H)(2). Again, such a provision requires proof that an employee was not at fault when the industrial accident occurred. Article 18, Section 8 does not permit the legislature to enact such a statute. *See Inscoe v. DeRose Indus., Inc.*, 226 S.E.2d 201, 206 (N.C. Ct. App. 1976) (holding that such a requirement injects "'fault' as negligence back into the statute in its broadest sense . . . . That is, to deny relief to [an employee] . . . would present a situation analogous to the common law understanding of contributory negligence which, of course, has been eliminated from Workmen's Compensation"); *see also* Davis pt. I, at I-1 ("When an injury . . . is covered by workers'

compensation, the worker . . . obtains no-fault protection. Neither the employer's nor anyone else's fault is relevant.").[5]

**V**

**A**

¶26      The dissent in *Grammatico*, as well as the court in *Komalestewa*, concluded that the legislature is permitted to define the phrase in Article 18, Section 8, "a necessary risk or danger of . . . employment," to exclude accidents occurring when the employee has recently used illegal drugs or alcohol before the injury.  *See Grammatico*, 208 Ariz. at 16, ¶ 26, 90 P.3d at 217 (Barker, J., dissenting); *Komalestewa*, 209 Ariz. at 212-13, ¶ 1, 99 P.3d at 27-28.  As the *Grammatico* majority correctly pointed out, however, such a definition of "a necessary risk or danger of . . . employment," would impermissibly "inject[] fault into the no-fault workers' compensation system and effectively abrogate[] claims for injuries partially caused or contributed to by workplace dangers."  208 Ariz. at 15, ¶ 20, 90 P.3d at 216.  Moreover, if we agreed with the *Grammatico* dissent and

---

[5]      The *Amicus Curiae* Brief of Southern Arizona Workers' Compensation Claimants Association ("SAWCCA") points out that Article 18, Section 6, the anti-abrogation clause of Arizona's constitution, preserves each person's "right of action to recover damages" for injuries.  From this, SAWCCA reasons that if an Arizona worker is deprived of the right to worker's compensation by a statute that introduces fault into the worker's compensation system, the worker retains the remedy of bringing a common law tort action against the employer.  Given our disposition of the issues in this consolidated matter, we need not consider SAWCCA's argument.

*Komalestewa* opinion, the legislature could circumvent Article 18, Section 8 by defining "a necessary risk or danger" to exclude a variety of injuries if caused in part by an employee's reckless or even negligent acts.  The legislature, for example, could preclude recovery for injured employees whose injuries were caused, in part, by talking on cell phones while driving,[6] by taking cold medication,[7] or even by being tired on the job. However, the language of Article 18, Section 8 and the history behind it prohibit the legislature from enacting legislation that injects fault into the workers' compensation system.

**B**

¶27      The dissent in *Grammatico* further concluded that an employee's drug use before coming to work and suffering an

---

[6]      Studies demonstrate that talking on cell phones while driving is extremely dangerous. *See, e.g.*, Donald A. Redelmeir & Robert J. Tibshirani, *Association Between Cellular-Telephone Calls and Motor Vehicle Collisions*, 336 *New England Journal of Medicine* 453, 456 (1997) (risk of accident increased 400% for drivers using cell phones; "relative risk is similar to the hazard associated with driving with a blood alcohol level at the legal limit"); David L. Strayer et al., *Fatal Distraction? A Comparison of the Cell-Phone Driver and the Drunk Driver*, http://www.psych.utah.edu/AppliedCognitionLab/DrivingAssessment2003.pdf ("cell-phone drivers may actually exhibit greater impairments . . . than legally intoxicated drivers").

[7]      Using over-the-counter cold medicine, such as Benadryl, can significantly increase the chance of automobile accidents. *See, e.g.*, John M. Weiler et al., *Effects of Fexofenadine, Diphenhydramine, and Alcohol on Driving Performance*, 132 *Annals of Internal Medicine* 354, 362 (2000) (driving performance was generally worse after taking Benadryl than after drinking alcohol).

injury is analogous to a meat cutter intentionally cutting off his own hand. *See* 208 Ariz. at 16-17, ¶ 28, 90 P.3d at 217-18 (Barker, J., dissenting); A.R.S. § 23-1021(A) (excluding compensation for self-inflicted injuries). We find that analogy analytically flawed.

¶28 To be sure, our courts have long held that employees who intentionally injure themselves may not recover workers' compensation. *See, e.g.*, *L.B. Price Mercantile Co. v. Indus. Comm'n*, 43 Ariz. 257, 268, 30 P.2d 491, 495 (1934) ("The only injury resulting from an accident which arises out of and in the course of employment that is not compensable under the law of Arizona is one that the employee purposely inflicts upon himself . . . .");[8] *Lopez v. Kennecott Copper Corp.*, 71 Ariz. 212, 215-16, 225 P.2d 702, 705 (1950) (upholding industrial commission's determination that the employee's injury was self-inflicted, and thus noncompensable, because circumstantial evidence showed that the employee had ignited a stick of dynamite at his feet); *Rural Metro Corp. v. Indus. Comm'n*, 197 Ariz. 133, 135, ¶ 7, 3 P.3d 1053, 1055 (App. 2000) ("[P]ursuant to our statutory scheme, an employee's injury is compensable so long as it is work related and has not been purposely self-inflicted."); *Glodo v. Indus. Comm'n*, 191 Ariz. 259, 262, 955 P.2d 15, 18 (App. 1998) (holding

---

[8] *L.B. Price Mercantile* did not refer to Article 18, Section 8, but to sections 1421 and 1426 of the Revised Code of 1928. 43 Ariz. at 268, 30 P.2d at 495.

that an employee cannot recover under workers' compensation if the injury results from an intentional act).

¶29    Intentionally self-inflicted injuries, however, bar compensation only to those employees who clearly have purposely inflicted their injuries. In *L.B. Price Mercantile*, for example, we concluded that an employee who violated criminal laws and was injured in the process was not barred from workers' compensation because such a violation merely established contributory negligence, which does not bar recovery under the workers' compensation scheme. 43 Ariz. at 265-68, 30 P.2d at 494-95. We explained that "[m]any people violate these provisions, some unintentionally, and some intentionally but certainly with no purpose of causing injury to themselves. By no construction of the facts can it be said that [the employee] by crossing McDowell Road in violation of traffic regulations intended to inflict an injury upon himself." *Id.* at 268, 30 P.2d at 495.

¶30    But in *Glodo*, the court of appeals determined that the employee had intentionally injured himself by punching a freezer door. 191 Ariz. at 262, 955 P.2d at 18. The court noted that the employee had argued that "while he may have purposely punched the freezer door, he did not 'purposely' fracture his finger." *Id.* The court disagreed, however, holding that "[a]n intentional act of violence that produces an injury that should

be expected is not accidental." *Id.*

¶31    In contrast, *Rural Metro* concluded that an employee's decision to reject medical advice, which resulted in a workplace injury, did not constitute an intentional injury. There, the employee had suffered a shoulder injury, which required surgery, and was told by her doctor not to return to work. 197 Ariz. at 134, ¶¶ 2-3, 3 P.3d at 1054. She nevertheless decided to return to work, stating that she "had no choice" because of financial reasons. *Id.* at ¶ 3. She re-injured her shoulder her first day back on the job. *Id.* at ¶ 4. The court of appeals upheld the administrative law judge's determination that the injury was compensable, concluding that "[a]lthough such action was arguably careless, if not reckless, no evidence was presented to suggest, nor does Rural Metro argue, that [the employee's] purpose in returning to work at Rural Metro was to reinjure herself." *Id.* at ¶ 8.

¶32    In distinguishing *Glodo*, the *Rural Metro* court emphasized that the employee in *Glodo* injured himself through an "intentional act of violence." *Id.* at 135, ¶ 9, 3 P.3d at 1055. In addition, the court pointed out that the injury in *Glodo* was "'almost inevitabl[e].'" *Id.* at 135-36, ¶ 9, 3 P.3d at 1056 (quoting *Glodo*, 191 Ariz. at 264, 955 P.2d at 20). The employee's action in *Rural Metro*, in contrast, "was neither an act of violence nor, as the [administrative law judge] found,

was it predictably certain to result in injury." *Id.* *Rural Metro* concluded, therefore, that the employee's "shoulder reinjury was not purposely self-inflicted." *Id*. at 136.

C

¶**33**     Alcohol and drug use is more akin to the facts of *Rural Metro* than to the facts of *Glodo*.  While alcohol consumption and illegal drug use shortly before work or during work undeniably increase the chances of being injured on the job, it cannot be unequivocally said that employees with alcohol or drugs in their systems who sustain injuries have *intentionally* injured themselves.  *See L.B. Price Mercantile*, 43 Ariz. at 268, 30 P.2d at 495.[9]

---

[9]     The court in *Komalestewa* also used a flawed analogy to argue that an employee who is impaired from either drugs or alcohol has abandoned his or her employment.  According to *Komalestewa*, Grammatico's fall while under the influence of drugs is analogous to an employee who, in a moment of tomfoolery, walks across the room on stilts while blindfolded, simply to show his fellow employees that he could, and falls in the process.  *See Komalestewa*, 209 Ariz. at 218, ¶ 27, 99 P.3d at 33.  That analogy is analytically flawed because, in that hypothetical, the employee has actually abandoned his employment.  An employee who walks across a room on stilts while blindfolded to show fellow employees that he is capable of doing it, is not doing anything connected to his employment.  Thus, it is fair to conclude that the employee has abandoned his employment.  *See, e.g.*, *Anderson Clayton & Co. v. Indus. Comm'n*, 125 Ariz. 39, 40-41, 607 P.2d 22, 23-24 (App. 1979) (finding that an employee who injured himself after jumping a bicycle seventy feet from a conveyor belt into a pile of seed was not acting in the course of employment: "'[W]here an injury is suffered by an employee while engaged in acts for his own purposes or benefits, other than acts necessary for his personal comfort and convenience while at work, such injury is not in the

¶**34**      We recognize that compelling policy reasons support banning drug and alcohol use in the workplace.  In fact, the legislature has enacted several statutes in addition to A.R.S. § 23-1021(C) and (D) to further this policy.  *See* A.R.S. §§ 23-493 to -493.11 (1995 & Supp. 2004) (providing for, among other things, collection of samples, scheduling of tests and procedures for drug and alcohol testing, disciplinary procedures, and employer protection from litigation).  Specifically, A.R.S. § 23-493.05 permits an employer to "take adverse employment action based on a positive drug test or alcohol impairment test," including termination of employment.  But as the majority in *Grammatico* stated:

> we cannot ignore that our constitutional system for workers' compensation requires the payment of benefits if a necessary risk or danger of employment partially caused or contributed to an industrial accident, without consideration of any fault by the injured employee.  Thus, unless and until the constitution is changed, the legislature cannot abrogate claims for workers' compensation for injuries wholly or partially caused or contributed to by necessary employment risks or dangers solely because an employee fails to pass . . . a drug or alcohol test.

---

course of his employment.'") (quoting *Rodriguez v. Indus. Comm'n*, 20 Ariz. App. 148, 150-51, 510 P.2d 1053, 1055-56 (1973)).  In neither Grammatico's nor Komalstewa's case did the record establish, nor did the respective administrative law judges find, that Grammatico or Komalestewa abandoned their employment.

208 Ariz. at 15, ¶ 18, 90 P.3d at 216.[10]

¶**35**     Consequently, because the necessary risks and dangers of working on drywall stilts could have partially caused or contributed to Grammatico's injury, A.R.S. § 23-1021(D) is unconstitutional as applied to deny Grammatico workers' compensation benefits.  Likewise, because the necessary risks and dangers of putting pressure on a drum to fix a "bogged down" conveyor belt could have partially caused or contributed to Komalestewa's injury, A.R.S. § 23-1021(C) is unconstitutional as applied to deny Komalestwa benefits.

VII

¶**36**     For the foregoing reasons, we affirm the court of appeals' decision in *Grammatico* setting aside the award, and reverse the court of appeals' decision in *Komalestewa*, and set aside the award.

---

[10]     In the 2005 session of the legislature, Representative Eddie Farnsworth introduced House Concurrent Resolution 2007, which would have amended Article 18, Section 8 by including language that would have precluded an injured worker from receiving compensation "if an accident [was] caused in whole or in part by a worker's use of alcohol or a controlled substance." The resolution passed both the Commerce and Judiciary Committees of the House of Representatives but apparently no further action was taken on it.  *See* Minutes of Committee on Commerce, Arizona House, 47th Legislature, 1st Reg. Sess., 7-8 (Feb. 16, 2005), *available at* http://www.azleg.state.az.us.legaltext/47leg/1r/comm_min/house/216comm.doc.htm; Minutes of Arizona House Committee on Judiciary, 47th Legislature, 16-17 (Feb. 24, 2005), *available at* http://www.azleg.state.az.us/legtext/47leg/1r/comm_min/house/0224jud.doc.htm.

_____
Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
Charles E. Jones, Justice (Retired)