IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHN R. FRANCE, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

GILA COUNTY, *Respondent Employer,*

ARIZONA COUNTIES INSURANCE POOL, *Respondent Carrier.*

No. 1 CA-IC 18-0047
FILED 2-18-2020

Special Action - Industrial Commission
No.  ICA 20171-990349
Carrier Claim No. WC17000001316
The Honorable Michelle Bodi, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Matt Fendon Law Group, Phoenix
By Matt C. Fendon
*Co-Counsel for Petitioner*

Toby Zimbalist Attorney at Law, Phoenix
By Toby Zimbalist
*Co-Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jones Skelton & Hochuli, P.L.C., Phoenix
By Lori L. Voepel
*Counsel for Respondent Employer and Respondent Carrier*

---

**OPINION**

Judge Kenton D. Jones delivered the Opinion of the Court, in which Presiding Judge Michael J. Brown and Judge Samuel A. Thumma joined.

---

**J O N E S**, Judge:

**¶1**      While on duty, deputy sheriff John France was assaulted by a manic gunman, who, screaming in rage, aimed a shotgun at France's chest and face from close range before the gunman was shot and killed by France and his partner.  In this statutory special action, France challenges the denial of workers' compensation benefits for his resulting post-traumatic stress disorder (PTSD).

**¶2**      For workers' compensation purposes, a "mental injury, illness or condition . . . is not compensable . . . unless some unexpected, unusual or extraordinary stress related to the employment . . . was a substantial contributing cause of the mental injury, illness or condition."  Ariz. Rev. Stat. (A.R.S.) § 23-1043.01(B).[1]  In this Opinion, we interpret the phrase "unexpected, unusual or extraordinary stress" contained within A.R.S. § 23-1043.01(B) to mean that the injury-inducing stress, imposed upon the claimant by virtue of his employment, was sufficiently significant and noteworthy to differentiate it from non-compensable, general stress caused by the work regimen.  Applying that standard to the facts presented here, we set aside the Industrial Commission of Arizona (ICA) decision and award denying France's claim for workers' compensation benefits.

---

[1]      Absent material changes from the relevant date, we cite the current version of rules and statutes.

**FACTS AND PROCEDURAL HISTORY**

¶3        In June 2017, France and another deputy sheriff were dispatched to a residence investigate a person threatening to kill himself with a shotgun.[2]  When they arrived at the house, a man burst through the doorway between them, holding a shotgun in a shooting stance.  The man pointed the shotgun at France and screamed in rage.  The man rushed toward France, his shotgun only a few feet away from France's face and torso, and ignored repeated requests to drop his weapon.  With the man between them, neither officer could act without endangering the other.  France eventually backed around the corner of the house with the gunman in pursuit.  When the officers were no longer within each other's line of fire, they each shot the man several times before he finally "fell to the ground, where France watched him die.

¶4        By mid-July 2017, France had been diagnosed with PTSD as a result of this trauma and filed a workers' compensation claim.  The Gila County Sheriff's Office and its insurer (collectively, GCSO) conceded that France suffers from PTSD caused by work-related stress but disagreed that the injury arose out of "some unexpected, unusual, or extraordinary stress related to the employment."  France challenged the denial of his claim.

¶5        After considering evidence of the training and responsibilities of law enforcement officers, the administrative law judge (ALJ) found, both initially and later upon review, that France was exposed to the "same stress that any other Gila County Sheriff's Deputy would have faced under the same circumstances, and therefore [France's] job-related stress was not unusual, unexpected or extraordinary."  The ALJ noted that, although France presented expert medical testimony that the incident "was *psychologically* extraordinary," this "d[id] not mean that it was *legally* extraordinary."  She then reasoned that "to accept [France's] claim as an industrial responsibility would reduce industrial insurance to a general health and accident insurance, which it is not."[3]

---

[2]        We view the facts and all inferences to be drawn therefrom in the light most favorable to upholding the ICA's findings and award.  *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 490-91, ¶ 2 (App. 2007) (quoting *Roberts v. Indus. Comm'n*, 162 Ariz. 108, 110 (1989)).

[3]        The ALJ did not consider France's argument that A.R.S. § 23-1043.01(B), is unconstitutional as applied to claimants "who work in high-

**¶6** France timely petitions for special action review of the ICA's decision and award. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶7** Almost since statehood, workers' compensation has been a critical part of Arizona law. In 1925, Arizonans approved an amendment to the Arizona Constitution requiring the legislature to enact a workers' compensation law for those "engaged in manual or mechanical labor in all public employment." Ariz. Const. art. 18, § 8. The Arizona Constitution thus mandates that:

> compensation shall be required to be paid to any such workman, in case of his injury . . . by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof . . . .

*Id.* The Workers' Compensation Act (the Act) was enacted in response to this directive. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 70, ¶ 13 (2005).

**¶8** Now codified at A.R.S. §§ 23-901 to -1105, the Act provides an administrative compensation system for workers injured in the course of their employment. *Twin City Fire Ins. v. Leija*, 244 Ariz. 493, 495, ¶ 11 (2018). Over time, the legislature has expanded the types of injuries covered by the Act, and, in 1980, the legislature enacted A.R.S. § 23-1043.01(B) to include mental injuries. *See* 1980 Ariz. Sess. Laws, ch. 246, § 32 (2nd Reg. Sess.). Under that statute:

> A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable . . . unless some unexpected, unusual or extraordinary stress related to the employment or some physical injury related to the

---

stress occupations." Because we set aside the ICA's decision and award, we need not address this argument.

employment was a substantial contributing cause of the
mental injury, illness or condition.

A.R.S. § 23-1043.01(B).

**¶9**        France challenges the ALJ's determination that his
confrontation with the gunman in June 2017 did not constitute an
"unexpected, unusual or extraordinary stress related to the employment"
within the meaning of A.R.S. § 23-1043.01(B).  Although the ALJ's factual
findings are reviewed for an abuse of discretion, the scope and application
of A.R.S. § 23-1043.01(B) present legal questions subject to *de novo* review.
*See Ibarra v. Indus. Comm'n*, 245 Ariz. 171, 174, ¶ 12 (App. 2018) (citing *PF
Chang's v. Indus. Comm'n*, 216 Ariz. 344, 347, ¶ 13 (App. 2007)).

**¶10**        Pursuant to our supreme court's direction, we construe the
Act liberally to accomplish its remedial purpose: to protect employees
injured while performing work-related activity.  *Engler v. Gulf Interstate
Eng'g*, 230 Ariz. 55, 59, ¶ 15 (2012) (citing *Robarge v. Bechtel Power Corp.*, 131
Ariz. 280, 282 (App. 1982), and *Grammatico*, 211 Ariz. at 72, ¶ 23); *accord
English v. Indus. Comm'n*, 73 Ariz. 86, 89 (1951) ("The Workmen's
Compensation Act was enacted to protect the workman and to relieve
society of the burden caused by industrial accidents.  Industry is chargeable
with and must bear the burden of the loss by injury and death to the human
machine.") (collecting cases).  We "must [also] take into consideration the
principle that every statute has to be read in the light of the constitution,"
*Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 407 (1945), and will
avoid an interpretation that renders the statute unconstitutional, *Brenda D.
v. Dep't of Child Safety*, 243 Ariz. 437, 444, ¶ 23 (2018) (citing *Bus. Realty of
Az., Inc. v. Maricopa Cty.*, 181 Ariz. 551, 559 (1995), and *Hayes v. Cont'l Ins.*,
178 Ariz. 264, 273 (1994)).

**¶11**        Here, after considering evidence that GCSO deputies are
trained "to deal with a variety of dangerous situations on the job,"
including "deciding whether to shoot or not shoot a subject in the line of
duty," the ALJ determined "[t]here is nothing in the" incident "that sets this
situation apart from the normal duties of a" GCSO deputy.  Concluding
France "was not subjected to any greater stress than any other" deputy
during the incident, the ALJ concluded that incident was not unusual,
unexpected, or extraordinary, and, as a result, denied France's claim.

**¶12**        At first blush, prior cases addressing mental injuries seem to
suggest that a claimant seeking compensation for a work-related emotional
injury must prove the injury-causing event was not contemplated as part of

his job responsibilities. *See, e.g.*, *Sloss v. Indus. Comm'n*, 121 Ariz. 10, 11-12 (1978) (affirming the non-compensability of a claim for mental injury where the claimant "was exposed to nothing other than the usual ordinary and expected incidents of his job as a Highway Patrolman"). But France does not assert a gradual or chronic mental injury, *see id.; Verdugo v. Indus. Comm'n*, 114 Ariz. 477, 479 (App. 1977); *Muse v. Indus. Comm'n*, 27 Ariz. App. 312, 314 (1976), or that his mental injury was caused by concerns regarding job security, *Lapare v. Indus. Comm'n*, 154 Ariz. 318, 319 (App. 1987), his subjective underlying psychiatric makeup, *Archer v. Indus. Comm'n*, 127 Ariz. 199, 205 (App. 1980),[4] or perceived conflicts with his supervisor, *Barnes v. Indus. Comm'n*, 156 Ariz. 179, 180-81 (App. 1988); *Pima Cmty. Coll. v. Indus. Comm'n*, 137 Ariz. 137, 138-39 (App. 1983). In those cases — which differ from France's claim here — the circumstances surrounding a claimant's employment and job duties were relevant to determining whether the mental injury complained of was attributable to the "stress related to the employment," A.R.S. § 23-1043.01(B), rather than the non-compensable failings of the human machine "inherent in life, generally," *Ziv v. Indus. Comm'n*, 160 Ariz. 330, 334 (App. 1989).

¶13 The issue to be resolved here, where the confrontation that precipitated France's PTSD was undoubtedly work-related, was not whether the event itself was "unexpected, unusual or extraordinary," but whether the *stress* France was exposed to as a result of his employment was "unexpected, unusual or extraordinary." It is, of course, events that create stress, but the distinction, however subtle, has meaning. An event — such as the dispatch of a law enforcement officer to investigate a report of threatened violence — may be routine. The stress of the event — which here included staring down the barrel of a loaded shotgun held by a screaming manic gunman, careful repositioning to avoid injury to a fellow officer, and shooting and killing another human being at point-blank range

---

[4] Our supreme court has confirmed that *Archer*'s discussion of unexpected, unusual, or extraordinary stress no longer applies to heart-related injuries, which now, by statute, need not arise from any particular type of stress. *See* A.R.S. § 23-1043.01(A) (stating heart-related injuries are compensable if "some injury, stress or exertion related to the employment was a substantial contributing cause"); *Bush v. Indus. Comm'n*, 136 Ariz. 522, 524 (1983) (confirming that the nature of stress as unexpected, unusual, or extraordinary is not necessary to establish a right to compensation for a heart-related injury). The discussion and conclusions in *Archer* remain sound as applied to mental injuries, which are compensable if "some unexpected, unusual or extraordinary stress related to the employment . . . was a substantial contributing cause." A.R.S. § 23-1043.01(B).

— may not be. Yet, the ALJ's findings regarding France's training and job duties indicate it focused upon the nature of the event, rather than the nature of the stress. This was error, and the ICA's decision and award must be set aside.

**¶14** Moreover, the ALJ defined "unexpected" as "not expected, unforeseen," "unusual" as "not usual," and "extraordinary" as "going beyond what is usual, regular or customary." In doing so, the ALJ conflated the terms "unexpected," "extraordinary," and "unusual," rendering the terms redundant. But, the legislature's decision to use these words suggests it understood there to be a difference between the three. *See State v. Harm*, 236 Ariz. 402, 407, ¶ 19 & n.4 (App. 2015) ("[W]hen the legislature chooses different words within a statutory scheme, we presume those distinctions are meaningful and evidence an intent to give a different meaning and consequence to the alternate language.") (citations omitted). Indeed, "[w]e presume the legislature avoids redundancy in favor of concision." *Saban Rent-a-Car L.L.C. v. Ariz. Dep't of Revenue*, 246 Ariz. 89, 97, ¶ 29 (2019); *see also Obregon v. Indus. Comm'n*, 217 Ariz. 612, 615, ¶ 16 (App. 2008) ("[E]ach word or phrase in a statute must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant.") (citing *Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10 (App. 2004)).

**¶15** The phrase "unexpected, unusual or extraordinary stress related to the employment" must be read as a whole and in a more general sense to mean, simply, that the injury-inducing stress imposed upon the claimant by virtue of his employment was sufficiently significant and noteworthy to differentiate it from the daily wear and tear of living. In this context, the "hypothetical 'reasonable person' working alongside claimant," identified in *Barnes* and generally relied upon to analyze compensability in other cases is not without purpose; the comparison of a claimant to a similarly situated person is limited, however, to providing a yardstick by which to distinguish "the work related nature of the [particularized] injury as compared to non-work related stress." *Barnes*, 156 Ariz. at 183.

**¶16** We do not suggest that every situation in which a law enforcement officer draws a weapon or uses deadly force will result in a compensable claim; a causal connection between the employment-related event and the alleged mental injury must also be established, *see* A.R.S. § 23-1043.01(B) — typically through expert testimony, *see DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320 (App. 1984) (citing *Allen v. Indus. Comm'n*, 124 Ariz. 173, 175 (App. 1979)). However, neither the possibility that such an

event might occur in the course of a law enforcement officer's duty nor the extent of his training to handle the situation is dispositive as to the question.

## CONCLUSION

¶17     The ICA's decision and award are set aside.



AMY M. WOOD • Clerk of the Court
FILED:  AA