NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

DAVID PETERSON, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

NAVAJO EXPRESS INC., *Respondent Employer,*

TRAVELERS INDEMNITY CO., *Respondent Carrier.*

No. 1 CA-IC 22-0041
FILED 9-7-2023

———————————————

Special Action - Industrial Commission
ICA Claim No.  20192700079
Carrier Claim No. 127-CB-FMP6119-E
The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

———————————————

COUNSEL

Joel F. Friedman, PLLC, Phoenix
By Joel F. Friedman
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich La Mont & Slavin, PC, Phoenix
By David Lundmark, Javier Arturo Puig
*Counsel for Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

---

**C A T L E T T**, Judge:

¶1          David Peterson ("Peterson") appeals the Industrial Commission of Arizona's denial of his workers' compensation claim. Peterson was injured after falling on his employer's premises. An Administrative Law Judge ("ALJ") concluded Peterson did not establish causation related to his employment. Instead, the ALJ found that a pre-existing, degenerative condition caused Peterson's injury. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Peterson was a long-haul truck driver at Navajo Express, Inc. ("Employer"). While walking outside Employer's building, Peterson's leg suddenly "gave out," causing him to fall, hit a wall with his right shoulder, and collapse to the sidewalk. Initially feeling "embarrassed" and "in shock," rather than in pain, Peterson walked to his truck and drove off to make deliveries. After one delivery, Peterson took a mandatory ten-hour break, sleeping in his truck. Peterson awoke feeling "sluggish" and "heavy" in his arms and legs. Soon thereafter, a doctor diagnosed Peterson with cervical stenosis and cervical myelopathy, requiring spinal surgery.

¶3          Peterson filed a workers' compensation claim, alleging that his injury from the fall was compensable. Travelers Indemnity Company, Employer's insurance carrier, denied the claim, and Peterson requested a hearing with an ALJ.

¶4          At the hearing, the primary issue was causation for the injury (i.e., whether it was work-related). Peterson maintained the injury was the result of an unexplained fall and should be covered under the neutral risk doctrine, which treats unexplained falls as compensable accidents. *See Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 95 (1990) ("*Circle K*"). Employer alleged Peterson fell because of a pre-existing spine condition. Thus, his employment did not contribute to his injury. At bottom, therefore, the hearing centered on Peterson's medical condition prior to the fall.

¶5        During the hearing, Peterson had no explanation for why he fell because he did not slip or trip on any object.  Peterson stated that he had no history of his leg giving out unexpectedly.  The hearing also included testimony regarding Peterson's gait.  A supervisor described Peterson as having a "bent over and then kind of hobbled side to side" gait since at least 2013.  The supervisor recalled a conversation during which Peterson attributed his gait to back issues.  Peterson, however, testified that before the incident he "thought [he] walked fine," but did admit to feeling periodic shocks in his legs.  He did not believe his gait was unsteady the morning of his fall; rather, he felt rested and without any weakness or pain.

¶6        Peterson's medical expert, Dr. Sharma, prepared a report referencing a "mechanical fall in 2019 due to [Peterson's] dog," the incident at his workplace, and "reports of 'limping or hobbling' dating back as early as 2013."  Dr. Sharma noted that Peterson had a spinal fusion in the mid-nineteen-nineties.  He compared a radiology report in Peterson's medical file, which included a description of a CT scan of Peterson's spine in 2005, to an MRI of his spine after his fall in 2019.  Dr. Sharma described Peterson's spinal cord as "severely compressed and compromised," and he explained there was "most likely a degenerative and progressive process."  But Dr. Sharma claimed Peterson did not "have any preexisting conditions that would explain" his workplace fall.

¶7        Dr. Sharma described cervical myelopathy as a "very slow and progressive process" that presents with "predominately upper extremity complaints more so than lower extremity complaints."  He disputed that Peterson's prior history of lower back pain was symptomatic of cervical myelopathy, instead viewing Peterson's symptoms as more representative of an acute spinal cord injury.  He testified that if an individual had cervical myelopathy severe enough to cause an abnormal gait, then the expectation would be for "that person to have significant upper extremity complaints" and that it would be "highly unlikely" for Peterson to be a long-haul truck driver, even if not fully symptomatic.

¶8        Employer's medical expert, Dr. Young, disagreed with Dr. Sharma and detailed how preexisting cervical myelopathy most likely explained Peterson's fall.  Dr. Young explained that cervical myelopathy "presents highly variably" with a "progressive decline in neurologic function of the extremities."  He described cervical myelopathy as a condition that is often misdiagnosed, with subtle loss of function in arms or legs that medical practitioners "overlook[] or writ[e] off" because it does not necessarily present as pain or numbness.  Dr. Young listed the MRI,

taken shortly after the incident, as showing evidence of cervical myelopathy.

**¶9**      Dr. Young testified that if Dr. Sharma's assessment of an acute cervical spinal cord injury was correct, then Peterson would have presented with a "classic paralysis in four extremities," resulting in the immediate need to be transported to the hospital. Dr. Young testified that Dr. Sharma's report "bolster[ed]" his view that Peterson instead had cervical myelopathy because it mentioned that Peterson had hobbled since 2013 and had a history of falling. Dr. Young explained that a history of falling, in isolation, was not the sole basis for his medical conclusion, but rather "adds evidence to the notion that [Peterson] had an unrecognized cervical myelopathy present during that time[.]" According to Dr. Young, Peterson's leg giving out was "expected or not unexpected for the diagnosis of cervical myelopathy," stating the radiographic and clinical evidence led him to that conclusion.

**¶10**      The ALJ found Dr. Young more persuasive and issued an award finding Peterson's claim not compensable. Peterson requested administrative review. Upon review, the ALJ affirmed the award.

**¶11**      Peterson timely sought special action review. We have jurisdiction. *See* A.R.S. § 12-120.21(B); A.R.S. § 23-943(H); Ariz. R. P. Spec. Act. 10.

## DISCUSSION

**¶12**      This court defers to the ALJ's factual findings but reviews questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003). A claimant must prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512 (App. 1985). Compensability requires both legal and medical causation. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 71 ¶ 19 (2005). A claimant establishes legal causation by demonstrating that the accident arose out of and in the course of employment. *Grammatico v. Indus. Comm'n*, 208 Ariz. 10, 12–13 ¶ 8 (App. 2004), *aff'd*, 211 Ariz. 67 (2005); *see also* A.R.S. § 23-1021. A claimant establishes medical causation by "showing that the accident caused the injury." *Grammatico*, 211 Ariz. at 71 ¶ 20. There is no dispute here that Peterson was in the course of his employment when he fell. The sole question is whether Peterson's injury arose from the employment, meaning whether the injury was caused in whole or part by a necessary employment risk. *See id.* at 71 ¶19.

¶13            In this case, the dispute is whether Peterson's fall is an unexplained or an idiopathic fall. An unexplained fall occurs where no explanation whatsoever is offered for the injury. *Circle K*, 165 Ariz. at 95. An idiopathic fall results from a pre-existing infirmity. *Id*. at 93. We consider the evidence in the light most favorable to upholding the ALJ's award and will affirm the decision unless there is no reasonable basis for it. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16 (App. 2002); *Hoffman v. Brophy*, 61 Ariz. 307, 312 (1944) (court will uphold an award "if there is any competent evidence in the record to sustain [it]"). In this case, the ALJ gave more weight to Dr. Young's medical opinion than Dr. Sharma's. This weight allocation was within the ALJ's discretion and is reasonable because there is record evidence supporting it. Dr. Young based his medical opinion about a pre-existing spine condition primarily on an MRI taken shortly after Peterson's fall. The surgeon who performed Peterson's surgery in 2019 also diagnosed cervical myelopathy and considered it a basis for surgery. There is sufficient evidence supporting Dr. Young's medical opinion that pre-existing cervical myelopathy caused Peterson's fall. The record evidence thus sufficiently supports the ALJ's conclusion that the cause of Peterson's fall was his pre-existing medical condition, not his employment.

¶14            Peterson argues the ALJ found his testimony "made no difference" and erred by not including an express finding regarding Peterson's credibility. Based on the ALJ's written decisions, we conclude otherwise—the ALJ did not disregard Peterson's testimony and made sufficient findings in the written decisions. An ALJ is required to "make specific findings on all material issues[.]" *Aguirre v. Indus. Comm'n*, 247 Ariz. 75, 77 ¶ 12 (2019). While an ALJ must do more than "simply state conclusions," findings do not need to be "exhaustive." *Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347 ¶ 9 (2002). Material issues are sufficiently resolved when an ALJ "find[s] the ultimate facts, and set[s] forth their application of law to those facts." *Post v. Indus. Comm'n*, 160 Ariz. 4, 8 (1989).

¶15            The ALJ sufficiently recognized the import of Peterson's testimony. In fact, the ALJ summarized Peterson's testimony as to the nature of his fall, eliminating other potential causes such as a slip and fall, while also acknowledging the presumption of an unexplained fall. But the inquiry did not end with Peterson's testimony because Employer could present evidence of an idiopathic cause to rebut the presumption. *See Circle K*, 165 Ariz. at 96. When the parties presented conflicting medical testimony, the ALJ ultimately concluded that Peterson's entitlement to compensation "does not turn on his credibility." Dr. Young's report and

testimony bore that reality out—Dr. Young's conclusions did not hinge on Peterson's credibility.

¶16　　　Ultimately, the ALJ is "the sole judge of witness credibility" and responsible for resolving conflicting medical testimony. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984); *Martin v. Indus. Comm'n*, 20 Ariz. App. 376, 378 (1973). Because the ALJ determined that Dr. Young's testimony was "most probably correct and well-founded" and it is supported by the evidence, we find no error. *See Smiles v. Indus. Comm'n*, 2 Ariz. App. 167, 168 (1965) ("This Court will not substitute its opinion for that of the [ALJ] where the [ALJ] has resolved a conflict in medical testimony.").

## CONCLUSION

¶17　　　We affirm the award finding Peterson's claim non-compensable.



AMY M. WOOD • Clerk of the Court
FILED:　AA